643 A.2d 554

ANTHONY NICOSIA, PLAINTIFF–RESPONDENT, v. WAKEFERN FOOD CORPORATION, DEFENDANT–APPELLANT.

Argued January 3, 1994—Decided June 30, 1994.

402

*Patrick M. Stanton* argued the cause for appellant (*Shanley & Fisher*, attorneys; *Mr. Stanton* and *Mark Diana*, on the briefs).

*Dennis S. Deutsch* argued the cause for respondent (*Gallo Geffner Fenster*, attorneys; *Mr. Deutsch* and *Valerie A. Vladyka*, on the briefs).

*Neil Mullin* and *Walter Lucas* submitted a brief on behalf of *amicus curiae*, National Employment Lawyers Association (*Smith Mullin*, attorneys; *Mr. Mullin*, *Mr. Lucas*, and *Nancy Erika Smith*, of counsel; *Mr. Mullin*, *Mr. Lucas*, *Ms. Smith*, *Peter Van Schaick*, *Richard Schall*, and *Richard Yaskin*, on the brief).

The opinion of the Court was delivered by

HANDLER, J.

In this case, a low-level supervisor was fired for the mishandling of merchandise. He filed a wrongful-discharge action against his employer. As in the companion case, *Witkowski v. Thomas J. Lipton, Inc.,* 136 *N.J.* 385, 643 *A.*2d 546 (1994), also decided today, the employee denies that his employer had any grounds to terminate him and claims that his discharge was wrongful because the employment manual distributed by the employer constitutes an implied contract that bars termination without cause under *Woolley v. Hoffmann–La Roche,* 99 *N.J.* 284, 491 *A.*2d 1257, *modified,* 101 *N.J.* 10, 499 *A.*2d 515 (1985). The employer contends that the employee is "at will" and therefore can be fired without cause and, further, that its employment manual does not constitute an implied employment contract, particularly in light of its disclaimer. The employer also claims that following the employee's termination, additional evidence was discovered that indicated that other grounds for his dismissal existed and that such "after-acquired evidence" constitutes a defense to the wrongful-discharge claim.

Following a jury trial, the trial court entered judgment in favor of the employee. On appeal, the Appellate Division upheld the judgment entered on the jury's verdict. The employer filed a petition for certification, which this Court granted, 134 *N.J.* 476, 634 *A.*2d 524 (1993). We affirm the judgment of the Appellate Division.

I

Plaintiff, Anthony Nicosia ("Nicosia"), was hired by defendant, Wakefern Food Corporation ("Wakefern"), in 1971. Nicosia was promoted several times during his eighteen-and-one-half years of employment. When Nicosia was terminated, he held the position of Warehouse Shift Supervisor.

Merchandise was illegally removed from Wakefern's warehouse on at least two occasions during Nicosia's employment. Wakefern never accused Nicosia of stealing the goods. Rather, it discharged

him for failing to maintain safe storage of the merchandise and for not following appropriate procedures on discovering the thefts. Nicosia claimed that he did in fact follow proper company procedures by immediately reporting the first theft to the "Inventory Control Department" and by reporting the second theft to both that department and his immediate supervisor.

After Nicosia's discharge, Wakefern discovered merchandise in and around Nicosia's desk that Wakefern claimed amounted to conversion. Additionally, an unauthorized signed property removal pass was found in Nicosia's possession. Wakefern also claimed that Nicosia had removed Wakefern property from the warehouse without submitting a property-removal pass. Wakefern asserts that had it known of any of those "infractions," it would have immediately discharged Nicosia.

Nicosia contends that he was terminated without receiving the benefit of the progressive-discipline steps outlined in an eleven-page section entitled "Wakefern Disciplinary Procedures," which was part of a larger manual entitled "Human Resources Policies and Procedures Manual" (the "manual"). That eleven-page section did not contain a disclaimer. Nicosia maintains that either that eleven-page document or the entire 160–page loose-leaf manual creates an implied employment contract, and that Wakefern breached it by terminating him without following the manual's procedural protections.

Wakefern does not dispute that the progressive-discipline policy existed at the time of Nicosia's termination. Wakefern asserts, however, that its disciplinary policy was embodied not in the eleven-page section but in the complete manual, which includes certain immediate-termination offenses. It also argues that because its manual was not "widely distributed," the manual does not give rise to an employment contract. Wakefern further contends that even if it was widely distributed, the disclaimer, which appeared in the first paragraph on the manual's first page, negated any employment contract. Therefore, the manual was not binding, and Nicosia could be fired without cause. In addition,

Wakefern asserts that even if the disclaimer was ineffective, Nicosia was not entitled to the manual's disciplinary policy protections because he committed an immediately terminable offense. Finally, Wakefern claims that evidence discovered after Nicosia's discharge, which allegedly indicated his conversion of merchandise, constitutes a defense to plaintiff's wrongful-discharge claim.

The trial court ruled that the disclaimer contained in the manual was insufficient as a matter of law to negate Wakefern's obligations as set forth in its manual. It submitted to the jury the issue of whether the entire manual or the eleven-page section, which contained the progressive-discipline procedure, constituted an implied employment contract, and if so, whether plaintiff's discharge violated those provisions. The jury found that the eleven-page manual section received by Nicosia created an implied contract of employment that was subsequently breached by Wakefern. On defendant's counterclaim, the jury also found plaintiff not guilty of conversion. In addition, the court refused to charge the jury with respect to the after-acquired-evidence defense.

On appeal, the Appellate Division "recognize[d] defendant's argument that even if plaintiff received only a portion of the manual, he is bound by the entire manual, including the disclaimer." However, it declined to resolve that issue because of its concurrence with the trial judge regarding "the inefficacy of the disclaimer," implicitly holding that either the manual or the eleven-page section did create an implied contract. The court also ruled that "[d]isputes of fact as to the contract status of an employee under a manual are properly submitted to the jury." Finally, the Appellate Division concluded that it need not consider the after-acquired-evidence defense because the jury had found Nicosia not guilty of conversion.

## II

This Court in *Woolley, supra,* 99 *N.J.* 284, 491 *A.*2d 1257, stated that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will

be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." 99 *N.J.* at 285–86, 491 *A.*2d 1257.

In the companion case, *Witkowski, supra,* 136 *N.J.* 385, 643 *A.*2d 546, we revisited the standards for determining whether an employment manual constitutes a contract of employment. We noted:

> In sum, under *Woolley,* the basic test for determining whether a contract of employment can be implied turns on the reasonable expectations of employees. A number of factors bear on whether an employee may reasonably understand that an employment manual is intended to provide enforceable employment obligations, including the definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution.
>
> [136 *N.J.* at 393, 643 *A.*2d at 550.]

The context of the preparation and distribution of the manual in this case supports the finding that the manual was intended to constitute an enforceable employment contract. *Woolley, supra,* 99 *N.J.* at 299, 491 *A.*2d 1257; *see Schwartz v. Leasametric, Inc.,* 224 *N.J.Super.* 21, 31, 539 *A.*2d 744 (App.Div.1988). The entire manual was distributed to a substantial number of Wakefern's workforce, although Nicosia may not have received it. *See Woolley, supra,* 99 *N.J.* at 304–05 n. 10, 491 *A.*2d 1257; *Gilbert v. Durand Glass Mfg. Co., Inc.,* 258 *N.J.Super.* 320, 330, 609 *A.*2d 517 (App.Div.1992). As was the manual in *Woolley,* Wakefern's manual, coincidentally, was distributed to 300 of the 3,000 person workforce. *See also Witkowski, supra,* 136 *N.J.* at 395, 643 *A.*2d at 551 (holding enforceable employee manual that was distributed to all employees); *Preston v. Claridge Hotel & Casino,* 231 *N.J.Super.* 81, 86, 555 *A.*2d 12 (App.Div.1989) (holding employee manual binding based in part on its "widespread distribution"). In fact, because approximately 1,500 of Wakefern's 3,000–person workforce is unionized and covered by a collective bargaining agreement, the manual would apply to only those 1,500 non-unionized employees. Moreover, Nicosia did actually receive the eleven-page section of the manual covering terminations.

Wakefern's manual also includes a definite, comprehensive termination policy. *See Witkowski, supra,* 136 *N.J.* at 393, 643 *A.*2d at 550; *Woolley, supra,* 99 *N.J.* at 296, 491 *A.*2d 1257. Its termination provision provides a three-step disciplinary procedure, which includes "employee counseling" (a first written warning), "caution" (a second written warning), and a "final warning." *See Witkowski, supra,* 136 *N.J.* at 396–397, 643 *A.*2d at 552. The manual further provides that "[a]ll steps *must* be completed in order to discharge for cause." "Cause" includes: "poor job performance; excessive absenteeism/tardiness/early departures, insubordination, violation of rules and regulations, gross negligence."

The procedural protections do not, however, apply in cases of "immediate discharge." Grounds for immediate discharge include:

Theft of Company property

Theft of an employee's property

Sexual harassment of any employee

Threatening or intimidating fellow employees

Use of alcohol or illegal substances on Company property, or possession of same

Overstaying a leave of absence

Willful destruction of Company property or property of other employees

Initialing for another employee's time on the time sheet

Falsification of records

Gross insubordination

Breach of Confidentiality

The evidence was clearly sufficient to support the determination that Wakefern's employees reasonably expected that the manual, particularly its discipline and termination policy, was intended to govern the rights and duties of Wakefern's workforce based on both the manual's content and distribution. *Id.* at 397, 643 *A.*2d at 552. Therefore, sufficient evidence showed that the manual, which included the eleven-page section, constituted an enforceable employment contract.

## III

Wakefern argues that the existence of a *Woolley* contract can be determined only on the basis of the entire or complete manual, not just a *part* of the manual. Accordingly, Wakefern contends that the trial court committed reversible error by instructing the jury that the eleven-page excerpt from the Wakefern manual could constitute the basis for an enforceable implied contract of employment.

Nicosia testified that he had never seen the 160–page Wakefern manual, but only the eleven-page excerpt on disciplinary procedures. The trial court instructed the jury that it should determine whether either the eleven-page section or the entire manual "constituted an offer which could be accepted by him by his continued employment with the company." The jury found that the eleven-page section, not the entire manual, constituted a contract between Nicosia and Wakefern, and that Wakefern had breached that contract.

In denying defendant's motion for dismissal, the trial court explained: "I find and conclude that when only that limited part of the manual is made available to the Plaintiff . . . he was not bound by the remainder of the manual which he had never seen. In any event, I find that the disclaimer provision of this case does not met the requirements of the *Woolley* decision."

The Appellate Division did not squarely address the issue of whether only part of an employment manual can become the basis for implying an enforceable employment contract: "We recognize defendant's argument that even if plaintiff received only a portion of the manual, he is bound by the entire manual, including the disclaimer. We need not, however, resolve this issue in light of our concurrence with the trial judge's view of the inefficacy of the disclaimer."

*Woolley* indicates that where an *entire* manual has been distributed to a workforce, that manual as a whole, not just a section of the manual, is relevant to the determination of whether it creates

an implied contract of employment. 99 *N.J.* at 307, 491 *A.*2d 1257. The Court in *Woolley* also noted that when a manual, in its entirety, is widely distributed to the workforce, it may give rise to an implied contract even for an employee who did not read the manual, know of its existence, or rely on it. *Id.* at 304–05 n. 10, 491 *A.*2d 1257; *see also Gilbert, supra,* 258 *N.J.Super.* at 330, 609 *A.*2d 517 (noting that under *Woolley,* "that the employee knows nothing of the particulars of the employer's policies and procedures" does not matter). That is because a widely-distributed manual is the "most reliable statement of the terms of the employment." *Woolley, supra,* 99 *N.J.* at 298–99, 491 *A.*2d 1257.

■ The lower court here apparently believed that a partial manual itself could constitute an employment contract because plaintiff claimed to have received only the eleven-page section dealing with termination, and not the entire manual. However, whether Nicosia actually received only a section of the manual is not the critical inquiry. Rather, it is whether the Wakefern manual as a whole, regardless of its actual receipt by the employee, gives rise to an implied contract of employment because of its terms—including most importantly those relating to employment security—and its wide distribution. *See Fregara v. Jet Aviation Business Jets,* 764 *F.Supp.* 940, 953 (D.N.J.1991) (noting that *Woolley* claim cannot rely on only portion of manual without being held accountable for all manual provisions: "*Woolley* stands for the proposition that a binding contract can be implied from provisions contained in an employee handbook. This contract, if implied, is binding as a whole.").

An employee may not select among the provisions of a employment manual to determine which provision should give rise to enforceable contractual obligations. If Nicosia "seeks to rely on provisions in the employee handbook as the source of an implied contract of employment, then he must accept the agreement as a whole with its attendant responsibilities." See *id.* at 951. In this case, then, the eleven-page excerpt must be considered in light of the entire manual, including the disclaimer, even if Nicosia was

unaware that the excerpt was part of a larger employment policy document.

The trial court's jury instructions, as noted, allowed the jury to find that a section of the Wakefern manual alone created a binding contract. Under the circumstances that instruction constitutes only harmless error because the entire employment manual—apart from the disclaimer—itself gave rise to an implied employment contract. That contract included the rights and obligations in the eleven-page section that plaintiff actually received.

## IV

■ Wakefern contends that its employment manual contained a disclaimer that negated the enforceability of the termination provisions set forth in the eleven-page section on which Nicosia relies.

■ An effective disclaimer by the employer may overcome the implication that its employment manual constitutes an enforceable contract of employment. *Woolley, supra,* 99 *N.J.* at 309, 491 *A.*2d 1257. The purpose of such a disclaimer is to provide adequate notice to an employee that she or he is employed only at will and is subject to termination without cause. "It would be unfair to allow an employer to distribute a policy manual that makes the workforce believe that certain promises have been made and then to allow the employer to renege on those promises." *Ibid.* An employer can make such a disclaimer by

the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have the absolute power to fire anyone with or without good cause.

[*Ibid.*]

In other words,

[t]he provisions of the manual concerning job security shall be considered binding unless the manual elsewhere prominently and unmistakably indicates that those

provisions shall not be binding or unless there is some other similar proof of the employer's intent not to be bound.

[*Ibid.* at 307, 491 *A*.2d 1257.]

The Court in *Woolley* recognized that "[m]any ... workers undoubtedly know little about contracts, and many probably would be unable to analyze the language and terms of [an employee] manual." *Id.* at 300, 491 *A*.2d 1257. Therefore, to determine whether a disclaimer constitutes an "appropriate statement" in a "very prominent" place, *id.* at 309, 491 *A*.2d 1257, a court should construe the disclaimer "in accordance with the reasonable expectations of the employees," *id.* at 298, 491 *A*.2d 1257. An effective disclaimer must be expressed in language "such that no one could reasonably have thought [the manual] was intended to create legally binding obligations." *Id.* at 299, 491 *A*.2d 1257.

The disclaimer relied on by Wakefern provides:

A. *Introduction*

This manual contains statements of Wakefern Food Corp. and its subsidiaries' Human Resource policies and procedures. (Hereafter referred to as "the Company"). The terms and procedures contained therein are not contractual and are subject to change and interpretation at the sole discretion of the Company, and without prior notice or consideration to any employee.

*Woolley* stressed that a disclaimer must be clear. 99 *N.J.* at 309, 491 *A*.2d 1257; *see, e.g., Toussaint v. Blue Cross & Blue Shield,* 408 *Mich.* 579, 292 *N.W.*2d 880, 891 n. 24, 895 (1980); *Thompson v. St. Regis Paper Co.,* 102 *Wash.*2d 219, 685 *P.*2d 1081, 1088 (1984); *Suter v. Harsco Corp.,* 184 *W.Va.* 734, 403 *S.E.*2d 751, 752 (1991). Although *Woolley* does not require the use of specific language for an effective disclaimer, it does require that a disclaimer make clear "that the employer continues to have the absolute power to fire anyone with or without cause." 99 *N.J.* at 309, 491 *A*.2d 1257; *see* Michael A. Chagares, *Utilization of the Disclaimer as an Effective Means to Define the Employment Relationship,* 17 *Hofstra L.Rev.* 365, 384 (1989) ("Employers wishing to confirm the terminable at-will status of their employees should include three components within their disclaimer: (1) that the employment relationship is terminable at the will of either

party, (2) that it is terminable with or without cause, and (3) that it is terminable without prior notice.").

The Appellate Division, in *Preston, supra,* 231 *N.J.Super.* at 81, 555 *A.*2d 12, addressed the *Woolley* requirement for an "appropriate statement" that disclaims the binding effect of the terms and conditions set forth in an employment manual. The *Preston* court stated that an effective disclaimer must expressly "advise its employees that they could be discharged at will." *Id.* at 87, 555 *A.*2d 12. In so doing, "the language in the disclaimer must indicate, in straightforward terms, that the employee is subject to discharge at will." *Id.* at 85, 555 *A.*2d 12.

Wakefern's disclaimer language fails to constitute an "appropriate statement" under *Woolley* because it does not use "straightforward terms." *See Preston, supra,* 231 *N.J.Super.* at 87, 555 *A.*2d 12. Instead, it contains "confusing legalese," such as the terms "not contractual," "subject to ... interpretation," and "consideration." *See Woolley, supra,* 99 *N.J.* at 300, 491 *A.*2d 1257; Chagares, *supra,* 17 *Hofstra L.Rev.* at 381 (stating "a disclaimer ... should not contain harsh language or confusing legalese"); *see also McDonald v. Mobil Coal Producing, Inc.,* 820 *P.*2d 986, 989 (Wyo.1991) (finding ineffective disclaimer that was unclear "[f]or persons untutored in contract law" for whom "such clarity is essential"). As the trial court noted, Wakefern uses "language that a lawyer would understand, but that an employee would not equate with the objectives of ... *Woolley.*" Nicosia should not be expected to understand that Wakefern's characterization of its manual as "not contractual" or "subject to change and interpretation at the sole discretion of the Company" meant that the employer, despite the discipline and termination provisions of its manual, reserved the "absolute power to fire anyone with or without cause" without actually changing those provisions. *See Woolley, supra,* 99 *N.J.* at 300, 491 *A.*2d 1257; *see also Swanson v. Liquid Air Corp.,* 118 Wash.2d 512, 826 *P.*2d 664, 677 (1992) (noting that term "contract of employment" is "manifestly unclear" because "at will employee *has* an employment contract—it

is simply one that may be ended at any time for any reason"). The burden is not on the employee "to draw inferences from the handbook language." *McDonald, supra,* 820 *P.*2d at 989.

■ *Woolley* also held that the disclaimer must be in "a very prominent position." 99 *N.J.* at 309, 491 *A.*2d 1257. Disclaimers in employee manuals fail for lack of prominence when the text is not set off in such a way as to bring the disclaimer to the attention of the reader. *Ibid.; McDonald, supra,* 820 *P.*2d at 988 (finding disclaimer that appeared on first page of employee manual as part of lengthy text not conspicuous because it was "not set off in any way, was placed under a general subheading, was not capitalized, and contained the same type size as another provision on the same page").

■ The "prominence" requirement can be met in many ways. Basically, a disclaimer must be separated from or set off in a way to attract attention. *See Jimenez v. Colorado Interstate Gas Co.,* 690 *F.Supp.* 977, 980 (D.Wyo.1988). For example, "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." *N.J.S.A.* 12A:1-201(10); *see Hannah v. United Refrigerated Servs., Inc.,* 430 *S.E.*2d 539 (S.C.Ct.App.1993) (applying South Carolina U.C.C. to find disclaimer not conspicuous on second page of first section under heading "WELCOME"). A reader's attention may be called by setting off the disclaimer with different type, including bold, *see Perry v. Sears, Roebuck & Co.,* 508 *So.*2d 1086, 1088 (Miss.1987), capitals, *see Jimenez, supra,* 690 *F.Supp.* at 980, or italics, *see Kari v. General Motors Corp.,* 79 *Mich.App.* 93, 261 *N.W.*2d 222, 223 (1977), *rev'd on other grounds,* 402 *Mich.* 926, 282 *N.W.*2d 925 (1978). A disclaimer may be underlined or set off by a different color or border. *See Jimenez, supra,* 690 *F.Supp.* at 980; *Kari, supra,* 261 *N.W.*2d at 223.

We concur in the finding of the Appellate Division that Wakefern had failed to meet the prominence test in part because its "statement is not highlighted, underscored, capitalized, or present-

ed in any other way to make it likely that it would come to the attention of an employee reviewing it."

We conclude that although the requirement of prominence can be satisfied in a variety of settings, and that no single distinctive feature is essential *per se* to make a disclaimer conspicuous, in this case the disclaimer was not placed or presented in a way calculated to focus the attention of a reader.

We are also satisfied that when the facts surrounding the content and placement of a disclaimer are themselves clear and uncontroverted, as in this case, the effectiveness of a disclaimer can be resolved by the court as a question of law. Conspicuousness will always be a matter of law. *See, e.g., N.J.S.A.* 12A:1–201(10); *Jimenez, supra,* 690 *F.Supp.* at 980 n. 1; *Hannah, supra,* 430 *S.E.*2d at 542; *McDonald, supra,* 820 *P.*2d at 988. In other cases, the effect of a disclaimer's content will also be a question of law. *Jimenez, supra,* 690 *F.Supp.* at 980 ("No genuine issue of fact exists as to matter such as the disclaimer's location or size, but exists to its effect only."). In some cases, however, just as a jury determines whether an employment manual gives rise to an implied contract, so too may a jury need to decide whether the content of a disclaimer is effective. *See Witkowski, supra,* 136 *N.J.* at 400–401, 643 *A.*2d at 554. In this case, the trial court could find as a matter of law, as it did, that the placement of Wakefern's disclaimer was not prominent and consequently, the disclaimer was ineffective.

In summary, the trial court correctly submitted to the jury the question of whether a *Woolley* contract existed because, as the Appellate Division noted, "disputes of fact as to the contract status of an employee under a manual are properly submitted to the jury." *See, e.g., Woolley, supra,* 99 *N.J.* at 298, 491 *A.*2d 1257; *Gilbert, supra,* 258 *N.J.Super.* at 331, 609 *A.*2d 517; *Preston, supra,* 231 *N.J.Super.* at 85, 555 *A.*2d 12; *Giudice v. Drew Chem. Corp.,* 210 *N.J.Super.* 32, 36, 509 *A.*2d 200 (App.Div.1986). The evidence, as recounted, was sufficient to support the determination that, by virtue of its specific provisions and distribution, the entire

Wakefern employment manual, including the eleven-page section actually received by plaintiff, constituted an implied contract of employment that barred termination without cause. In addition, based on the uncontroverted lack of prominence, the issue of the effectiveness of the disclaimer under the circumstances posed only a question of law that the trial court properly resolved by determining that the disclaimer was ineffective in negating the enforceable obligations of the employment manual.

V

Lastly, Wakefern contends that the after-acquired-evidence doctrine should be a defense to a wrongful-discharge claim based on the breach of an implied contract of employment that derived from its personnel manual. It asserts that the doctrine should have been available as a defense to plaintiff's claim because evidence discovered after plaintiff's discharge justified his immediate termination.

The after-acquired-evidence doctrine allows employers to escape or limit liability for an unlawful termination by introducing evidence of an employee's wrongdoing that the employer discovers *after* its decision to terminate the employee. *See* Ann C. McGinley, *Reinventing Reality: The Impermissible Intrusion of After–Acquired Evidence in Title VII Litigation*, 26 *Conn.L.Rev.* 145, 147 n. 10 (1993) (defining rule as "evidence of an employee's on-the-job misconduct or of an employee's misrepresentation on his [or her] job application or resume that the employer unearths only after making an adverse employment decision regarding the employee").

The after-acquired-evidence doctrine was first articulated by the Tenth Circuit in *Summers v. State Farm Mutual Automobile Insurance Co.*, 864 *F.*2d 700, 708 (1988), in a case in which an employer discovered evidence that a discharged employee, who contended that his termination had been unlawful because it violated laws against discrimination, had falsified insurance claims.

The court ruled that the after-acquired evidence constituted a complete bar to the employee's recovery.

Generally, courts consider the after-acquired-evidence rule in the context of an unlawful termination based on a violation of the laws against discrimination. The basic rationale of the doctrine is that the employee is not entitled to relief because "the employee either should not have been hired in the first place or should have been fired before the discrimination occurred and therefore, is not entitled to any remedy for subsequent discrimination as a matter of law." William S. Waldo & Rosemary A. Mahar, *Lost Cause and Found Defense: Using Evidence Discovered After an Employee's Discharge to Bar Discrimination Claims,* 9 *Lab.Law.* 19, 33 (1993). However, the after-acquired-evidence rule is not applied uniformly. Some courts have adopted a strict after-acquired defense, which precludes *all* recovery, while others have adopted a more limited application, which does not totally bar recovery for the unlawful termination but restricts or reduces compensatory relief. *See McKennon v. Nashville Banner Publishing Co.,* 9 *F.*3d 539 (6th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994); Cheryl Krause Zemelman, *The After–Acquired Evidence Defense to Employment Discrimination Claims: The Privatization of Title VII and the Contours of Social Responsibility,* 46 *Stanford L.Rev.* 175, 176 (1993).

The availability of the after-acquired-evidence doctrine as a defense to a wrongful discharge claim based on an implied contract of employment presents a novel and controversial question. The policy concerns that are at stake in applying the after-acquired-evidence defense to an unlawful discharge based on invidious discrimination differ from those that are implicated in private-employment-contract actions under *Woolley. See Massey v. Trump's Castle Hotel & Casino,* 828 *F.Supp.* 314, 325 (D.N.J. 1993) (noting that "unlike policies underlying the [New Jersey] anti-discrimination statutes, there is no competing policy under ordinary contract principles to discourage an employer's breach of contract"); *see also Bazzi v. Western & S. Life Ins. Co.,* 808

*F.Supp.* 1306, 1310 (E.D.Mich.1992) (noting "important distinction between the duties arising from contract and the duties imposed by remedial legislation"); *Schuessler v. Benchmark Mktg. & Consulting Inc.*, 243 Neb. 425, 500 *N.W.2d* 529, 541 (1993) ("Breach of contract does not give rise to the same concerns or demand the same protections as does an action based on discrimination."). *See generally* David H. Ben–Asher, *Should Discriminating Employers Be Insulated From All Liability By the Use of After–Acquired Evidence?*, 17 *N.J.Lab. & Emp.L.Q.* 3 (Spring 1994) (criticizing potential adoption of after-acquired-evidence defense in New Jersey); David D. Kadue & William J. Dritsas, *When What You Didn't Know Can Help You—Employers' Use of After–Acquired Evidence of Employee Misconduct to Defend Wrongful Discharge Claims*, 27 *Beverly Hills B.A. J.* 117 (1993) (analyzing various contract theories under which after-acquired-evidence rule may be justified); Walter Lucas, *Throwing After–Acquired Evidence Into the Fire*, 136 *N.J.L.J.* 34, 54 (Jan. 3, 1994) (criticizing potential adoption of defense in New Jersey); Stephen E. Trimboli & Nathaniel L. Ellison, *After–Acquired Evidence: Should Employees Profit From Their Own Wrongdoing?*, 17 *N.J.Lab. & Emp. L.Q.* 5 (Spring 1994) (arguing for adoption of defense in New Jersey).

We recognize the importance of employment security, which is at the core of the *Woolley* doctrine, when that is promised by an employer and relied on by its workers. *Woolley, supra,* 99 *N.J.* at 299, 491 *A.2d* 1257. We have sought to protect the stability of employment relations and to encourage certainty with respect to employment rights and obligations, *Montells v. Haynes,* 133 *N.J.* 282, 627 *A.2d* 654 (1993), because "[w]e are a nation of employees" and the "[g]rowth in the number of employees has been accompanied by increasing recognition of the need for stability in labor relations," *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 66, 417 *A.2d* 505 (1980).

The difficulty in assessing and weighing those policy concerns is compounded with respect to a termination that is not based on

unlawful discrimination or similar violation of law. We are thus counselled to proceed cautiously, especially in this case, which does not squarely present the issue of whether and how the after-acquired-evidence rule should apply in actions for the breach of private employment contracts based on employment manuals under the *Woolley* doctrine.

The after-acquired-evidence defense was raised by Wakefern's counterclaim, in which it alleged that Nicosia had wrongfully possessed approximately $500 worth of products in and around his desk and that such evidence constituted independent grounds for his discharge. It claimed that the after-acquired-evidence rule barred any relief for the allegedly wrongful discharge. However, the factual issue of conversion under the counterclaim was submitted to the jury and the jury found Nicosia not guilty of conversion.

In denying defendant's motion to dismiss, the trial court commented on the conversion charge and the after-acquired-evidence rule:

In my opinion, there is no New Jersey case establishing the theory to support the Defendant's position at least based upon the facts such as we had in this case. In this case.... [t]he jury found that there had not been any conversion of the employer's property by the employee.

The Appellate Division agreed, ruling that because the jury had found Nicosia not guilty of conversion, no consideration of the after-acquired-evidence rule was required:

The *Summers* defense has not been considered in this jurisdiction in a reported opinion, and we need not do so now since we are satisfied that even if theoretically sound, it was effectively rejected by the jury here on the facts. We base this conclusion on the jury's no-cause finding on defendant's conversion counterclaim.

On appeal to this Court, Wakefern now suggests that the jury's finding on conversion does not obviate or foreclose the application of the after-acquired-evidence defense because other evidence demonstrates grounds for the defense in addition to or other than the conversion of property. However, at trial, Wakefern argued that conversion was the basis for its counterclaim and its attempted after-acquired-evidence defense. Therefore, we defer to the jury and the lower courts, which with ample support in the record

rejected defendant's conversion counterclaim, thereby negating the proffered basis for its after-acquired-evidence defense.

We too are satisfied that under the circumstances this case does not directly present the issue of whether the after-acquired-evidence defense is applicable in a breach-of-contract claim under *Woolley,* and accordingly we decline to address it further.

## VI

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, O'HERN, HANDLER, GARIBALDI and STEIN—7.

*Opposed*—None.