Benjamin F. SELLITTO, Jr., Plaintiff,

v.

LITTON SYSTEMS, INC., Litton Industries, Inc., Airtron Division, Litton Systems, Inc., ABC Corp. (said name being fictitious), Robert Obst, General Manager of Airtron Division, Litton Systems, Inc. and John Doe (said name being fictitious), Defendants.

Civ. No. 93–3885 (HLS).

United States District Court,
D. New Jersey.

Sept. 13, 1994.

934

Joseph J. Bell, Denville, NJ, for plaintiff.

Francis X. Dee, Carpenter, Bennett & Morrissey, Newark, NJ, for defendants.

## OPINION

SAROKIN, District Judge.

Before the court is defendants' motion for summary judgment.

*Background*

Plaintiff Benjamin F. Sellitto, Jr. ("Sellitto") began work on March 19, 1990 as a Marketing Manager in the Microwave Products Group of defendant Airtron Division, Litton Systems, Inc. ("Airtron"). Airtron engineers, manufactures, and markets microwave components for commercial and military radar defense systems applications.

On his first day at Airtron, Sellitto received copies of the Airtron Employee Handbook ("Handbook") and a booklet entitled *Litton—Statement of Principles* ("Booklet"). The same day plaintiff signed a separate, one-page document labeled Statement of Employment Relationship ("Statement"). At some later date, plaintiff also received a copy of the Airtron Policy Manual ("Manual").

The Handbook and Manual contain detailed summary discharge and progressive discipline procedures that are substantially similar, enumerating grounds for immediate dismissal and for the initiation of a four-step progressive discipline process. In the Manual and Handbook, one of the grounds for invocation of the progressive disciplinary

procedure is "poor work performance." Poor performance is not listed as a ground for immediate dismissal in either the Manual or Handbook.

Both documents contain a Preface stating that neither the Manual nor the Handbook constitute a "contract of employment," nor should they be "construed or interpreted" as such. The documents also include a paragraph following the text of the disciplinary procedures repeating that the documents do not constitute a contract of employment, nor should they be so construed. Finally, the Statement signed by Sellito on his first day reads in part, "the Company recognizes your right to resign at any time for any reason, and retains the right to terminate the employment relationship at any time for any reason."

On June 18, 1990, Sellito's supervisor completed an Initial Evaluation Review Form indicating that Sellito's performance had been satisfactory to date and provided Sellitto a copy. As part of a company-wide cost containment action, Airtron announced July 30, 1990 that it would postpone all performance evaluations and wage increases six months beyond the date they would otherwise have been made, which for Sellito would have been March 1991.

In May 1991, the same supervisor prepared an "Initial Review" listing five "major weaknesses and concerns" with plaintiff's work, and in June 1991 the supervisor prepared a Performance Review and Appraisal detailing further concerns. Airtron did not provide copies of either the May 1991 or the June 1991 evaluations to plaintiff.

On June 21, 1991 Airtron terminated Sellito for allegedly poor performance. It is undisputed that Airtron ignored the progressive disciplinary procedures of the Manual and Handbook.

Plaintiff commenced this action on or about June 18, 1993 by filing a complaint in the Superior Court of New Jersey, Law Division, Passaic County, claiming breach of an implied contract of employment, breach of an implied covenant of good faith and fair dealing, and negligent or intentional infliction of emotional distress.

After receiving plaintiff's Statement of Damages, indicating that plaintiff seeks damages of $826,000, on or about August 27, 1993 defendant filed a Notice of Filing of Notice of Removal, pursuant to 28 U.S.C. §§ 1446 and 1332(a)(1).

Following discovery, defendants moved for summary judgment, claiming that Sellito was an employee-at-will unprotected by an implied employment contract or implied covenant, and that plaintiff had failed to state a claim for negligent or intentional infliction of emotional distress.

*Discussion*

This court will grant summary judgment when there are no issues of material fact presented in admissible form and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987). In opposition to a motion for summary judgment, a party

> must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Though plaintiff failed to submit any affidavit in opposition to the motion, defendants are not excused from their burden of establishing the lack of a material issue of fact. On a motion for summary judgment, "the court is obligated to search the record and independently determine whether or not a genuine issue of fact exists." *Higgins v. Baker,* 309 F.Supp. 635, 639 (S.D.N.Y.1969), quoted in 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2739 (1983). In fact, when the moving party's papers themselves "demonstrate that there is inherent in the problem a factual controversy then ... a counter-affidavit is not essential." *Inglett & Co. v. Everglades Fertilizer Co.,* 255 F.2d 342, 348 (5th Cir.1958); *White v.*

*Thomas,* 660 F.2d 680, 683 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982) (same); *Adickes v. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### 1. Breach of implied contract for employment

The first issue presented is whether defendants' disclaimers are sufficient to negate any possible implied contract contained in the Manual or Handbook.

■ In New Jersey, employees serve at the will of their employer unless there is an employment contract. *Woolley v. Hoffmann–La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985), *modified,* 101 N.J. 10, 499 A.2d 515 (1985); *Bernard v. IMI Sys., Inc.,* 131 N.J. 91, 106, 618 A.2d 338 (1993). Since 1985, however, the harsh consequences of at-will employment have been mitigated by the unanimous *Woolley* decision and its progeny, which hold that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." *Woolley,* 99 N.J. at 285–86, 491 A.2d 1257. Where a manual is detailed, comprehensive, widely distributed, and lacks a clear and prominent disclaimer, characteristics which a court "should construe in accordance with the reasonable expectations of the employees," *id.* at 298, 491 A.2d 1257, an enforceable contract exists.

The *Woolley* decision was rooted in the Court's belief that the common-law doctrine of employment at will, appropriate for a 19th century economy, no longer reflected modern legal and economic relationships. *Id.* at 291, 491 A.2d 1257; *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 72, 417 A.2d 505 (1980). No longer is there the unquestioned deference to the interests of the employer and the almost invariable dismissal of the con-

tentions of the employee ... this Court [is] no longer willing to decide these questions without examining the underlying interests involved, both the employer's and the employees', as well as the public interest, and the extent to which our deference to one or the other served or disserved the needs of society as presently understood.

*Woolley,* 99 N.J. at 291, 491 A.2d 1257.[1] The Court believed further that "[i]t would be unfair to allow an employer to distribute a policy manual that makes the workforce believe that certain promises have been made and then to allow the employer to renege on those promises." *Id.* 99 N.J. at 309, 491 A.2d 1257.

*Woolley*'s recognition of implied employment contracts did not create the first exceptions to the at-will doctrine. *See N.J.S.A.* 10:5–1 to –28 (prohibiting discrimination on basis of race, creed, sex, age, marital status, ancestry, national origin, family status, or sexual orientation); *Pierce,* 84 N.J. at 73, 417 A.2d 505 (prohibiting discharges that are contrary to public policy).

Since *Woolley* courts have analyzed the reasonable expectations of numerous employees regarding their employment manuals, finding that some constitute implied contracts, *see e.g. Preston v. Claridge Hotel & Casino, Ltd.,* 231 N.J.Super. 81, 555 A.2d 12 (App.Div.1989); *Schwartz v. Leasametric, Inc.,* 224 N.J.Super. 21, 539 A.2d 744 (App. Div.1988); *House v. Carter–Wallace, Inc.,* 232 N.J.Super. 42, 556 A.2d 353 (App.Div.), *certif. denied,* 117 N.J. 154, 564 A.2d 874 (1989), while others do not, *see e.g. Radwan v. Beecham Laboratories Div. of Beecham, Inc.,* 850 F.2d 147 (3d Cir.1988); *Maietta v. United Parcel Service,* 749 F.Supp. 1344 (D.N.J.1990), *aff'd without op.,* 932 F.2d 960 (3d Cir.1991) (policy book states only goals and ideals, not a comprehensive discharge procedure); *Brunner v. Abex Corp.,* 661 F.Supp. 1351 (D.N.J.1986) (manual's termination procedure insufficiently detailed to constitute contract); *Labus v. Navistar Int'l*

1. The *Woolley* Court also expressed concern that employers may distribute employment manuals to ward off a union organizing campaign, only to renege on the promises of the manual when the danger of unionization has passed. *Id.* 99 N.J. at 296–97, 491 A.2d 1257. There is no indication in the record before this court that Airtron distributed its Manual and Handbook to defeat a union campaign.

*Transp. Corp.,* 740 F.Supp. 1053 (D.N.J.1990) (employee who learned of employment manual only after termination had no reasonable expectation manual's discharge policy would be followed); *Kane v. Milikowsky,* 224 N.J.Super. 613, 541 A.2d 233 (App.Div.1988).[2]

On June 30, 1994 the New Jersey Supreme Court revisited *Woolley,* rendering two unanimous decisions in favor of discharged employees and further explaining the circumstances under which a manual's job security provisions create an enforceable contract. *See Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 643 A.2d 546 (1994) (reversing summary judgment for employer, as distribution of employment manual creates issue of fact as to existence of implied contract); *Nicosia v. Wakefern Food Corp.,* 136 N.J. 401, 643 A.2d 554 (1994) (upholding judgment after jury trial that employment manual created enforceable contract and affirming that employer's disclaimer inadequate to negate contract). Both cases endorsed overwhelmingly the analysis of *Woolley* while refining the standards for judicial review of implied employment contracts.

### a. Disclaimers

Defendants first argue that they provided disclaimers to plaintiff which negated the job security provisions of the Handbook and Manual, rendering the summary discharge and progressive discipline clauses unenforceable.

In *Nicosia* the Supreme Court repeated the *Woolley* holding that an "effective disclaimer by the employer may overcome the implication that its manual constitutes an enforceable contract of employment." *Nicosia,* 136 N.J. at 412, 643 A.2d 554. To determine the adequacy of a disclaimer, the Court applied the *Woolley* requirement that it be an "appropriate statement" in a "very promi-

nent" place, and directed that a court should construe the disclaimer pursuant to the reasonable expectations of an employee. *Id.* at 413, 643 A.2d 554, citing *Woolley,* 99 N.J. at 298, 309, 491 A.2d 1257.[3]

The "prominence" requirement compels a court to examine the physical characteristics of a disclaimer, such as its typeface, point size, heading, and the degree to which it is "separated from or set off in a way to attract attention." *Nicosia,* 136 N.J. at 415, 643 A.2d 554. *See also Jimenez v. Colorado Interstate Gas Co.,* 690 F.Supp. 977, 980 (D.Wyo.1988). "Conspicuousness will always be a matter of law." *Nicosia,* 136 N.J. at 416, 643 A.2d 554.

The "clarity" requirement compels analysis of the language and content of a disclaimer. The language must be written in "straightforward terms", *Preston v. Claridge Hotel,* 231 N.J.Super. at 85, 555 A.2d 12, rather than "confusing legalese." *Woolley,* 99 N.J. at 300, 491 A.2d 1257; *Nicosia,* 136 N.J. at 413–14, 643 A.2d 554. *See* Michael A. Chagares, *Utilization of the Disclaimer as an Effective Means to Define the Employment Relationship,* 17 Hofstra L.Rev. 365, 381 (1989) (disclaimer should avoid "harsh language or confusing legalese"). The clarity of a disclaimer is a question of law "when the facts surrounding the content and placement of a disclaimer are themselves clear and uncontroverted", *Nicosia,* 136 N.J. at 416, 643 A.2d 554, but it may also be a question of fact submitted to a jury. *Id.*

Defendants are correct that "there is no dispute regarding the content and placement of Airtron's disclaimers," Reply Br. at 9, especially in light of plaintiff's failure to submit any evidence in admissible form in opposition to the instant motion. Hence this court finds that the prominence and clarity of Airtron's disclaimers are questions of law

---

**2.** As the review indicates, state courts have tended to apply the *Woolley* analysis more expansively than their federal brethren. This court is of course bound by state court constructions of state law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**3.** Defendants refer this court to two decisions that predate *Nicosia, Ware v. Prudential Insurance Co.,* 220 N.J.Super. 135, 531 A.2d 757 (App.

Div.1987) (employment contract in which employee agrees to at-will status negates employment manual) and *Radwan v. Beecham, supra* (statement in employment application that employee may be terminated "at any time without previous notice" negates discharge provision of employment manual). Unlike in *Ware,* here there is no individual employment contract, nor an application as in *Radwan.*

938

appropriately addressed in a motion for summary judgment.

Turning to the facts of this case, defendants argue that Airtron's multiple disclaimers are sufficiently prominent and clear under *Woolley* and *Nicosia* to negate any implied contract. Specifically, defendants direct the court's attention to (1) Airtron's initial letter offering employment to plaintiff; (2) the Preface to the Manual; (3) text within the Manual regarding job security; (4) the Preface to the Handbook; (5) text within the Handbook regarding job security; (6) a paper signed by plaintiff acknowledging receipt of the Handbook; (7) a paper signed by plaintiff acknowledging receipt of the Booklet; and (8) the Statement signed by plaintiff on his first day at work. Def.Brief at 20–25; Reply Brief at 7–9.

Three of the eight items are easily determined. First, the letter offering plaintiff a job states "This letter does not serve as a contract of employment." Chapman Aff., Ex. A. This sentence attempts to negate any promises in the *letter* but disclaims nothing in the Handbook or Manual and is therefore insufficiently clear. *Preston v. Claridge Hotel,* 231 N.J.Super. at 85, 555 A.2d 12; *Nicosia,* 136 N.J. at 413–14, 643 A.2d 554. Similarly, the receipt for the Booklet states "I understand the booklet is not intended to create any new or additional employment rights." Chapman Aff., Ex. E. Plaintiff does not rely on the Booklet in arguing for the existence of an implied contract, and so this receipt is insufficiently clear to negate statements in the Handbook and Manual. *Id.* Third, the signed paper acknowledging receipt of the Handbook contains no disclaiming language whatsoever; the paper merely informs plaintiff that he should read the Handbook. Chapman Aff., Ex. D. This receipt is insufficiently clear. *Id.*

Next are the disclaimers included in the Handbook and Manual following the text that sets forth the summary discharge and progressive discipline procedures. Chapman Aff., Ex. C; Complaint, Ex. A. In the Handbook, the disclaimer appears on the third page of text, and in the Manual, on the fourth page of text discussing job security. Both are printed in the same type face, in the same point size, under a capitalized, bold-faced heading "NOTE." The disclaiming language comes in the second paragraph of the Note. This court finds that the paragraphs in the Handbook and Manual are not sufficiently prominent to survive *Nicosia* scrutiny, as they are not "separated from or set off in a way to attract attention," *Nicosia,* 136 N.J. at 415, 643 A.2d 554; *Jimenez v. Colorado Gas, supra.* The bland heading "Note" is particularly inconspicuous. *See Hannah v. United Refrigerated Servs., Inc.,* — S.C. ——, 430 S.E.2d 539 (Ct.App.1993) (disclaimer not conspicuous under heading "WELCOME").[4]

Defendants also point to the prefaces of the Handbook and Manual, which they submitted to the court as single-paragraph statements alone on a page. Plaintiff does not contest their form. The Handbook states:

### PREFACE

Neither this handbook nor any statement set forth in it shall constitute a contract of employment, or be construed or interpreted as such. In the event of any alleged conflict between this provision and any other part of this handbook, this provision shall prevail.

*Business Jets,* 764 F.Supp. 940, 950 (D.N.J.1991) (existence of probationary period in which employees can be terminated at will may create expectation that those who survive probation not terminable at will). Additionally, each disclaimer contains precisely the sort of "confusing legalese" that the *Woolley* and *Nicosia* courts found unacceptable. *See* Chapman Aff., Ex. C; Comp., Ex. A ("These rules ... shall not be construed ... as constituting a contract of employment").

---

**4.** The content of the disclaimers in the text of the Handbook and Manual is also deficient. Each disclaimer states that the procedures "to be taken by the Company prior to discharge" apply to regular full-time and part-time employees, but not to employees in the "initial evaluation period," who can be "immediately terminated with no prior warnings, at the Company's discretion." This language could create a reasonable expectation that employees who survive the probationary period enjoy the protection of the progressive discipline procedures. *See Fregara v. Jet Aviation*

Chapman Aff., Ex. C. The preface to the Manual is similar:

### PREFACE

The policies and procedures set forth in this manual are for the guidance of management and supervision. Nothing set forth in these policies and procedures constitutes a contract for employment nor shall any part of them be construed or interpreted in any way to constitute a contract of employment.

Chapman Aff., Ex. F. The court finds that the prefaces are not sufficiently clear to negate the detailed job security provisions contained in the Handbook and Manual. The *Woolley* and *Nicosia* holdings emphasize that to negate a detailed, comprehensive job security provision in an employment manual, a disclaimer must be cast in language that conveys to non-lawyers

> that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have absolute power to fire anyone with or without good cause.

*Woolley,* 99 N.J. at 309, 491 A.2d 1257. In *Nicosia,* the Supreme Court found insufficiently clear a disclaimer that contained the legal phrases "not contractual," "subject to . . . interpretation" and "consideration," because an employee "should not be expected to understand" the meaning of those words in light of the detailed discharge and discipline procedures that followed. *Nicosia,* 136 N.J. at 414, 643 A.2d 554. *See also Preston v. Claridge Hotel,* 231 N.J.Super. at 85, 555 A.2d 12 (disclaimer must use "straightforward" language). Given the use of legalistic language, the failure to state in the preface that employees can be fired at any time for any reason, and the contradiction between the preface and the text, the prefaces do not negate the contents of the Manual and Handbook.

Finally, the court must consider the Statement offered Sellitto for signature on his first day of work:

SUBJECT: STATEMENT OF EMPLOYMENT RELATIONSHIP

Congratulations on your first day at Airtron–Litton Systems. While we are pleased with your decision to begin employment with our Company, we are also aware that a satisfactory employment relationship exists only with the mutual agreement of both employee and Company. As previously stated in our employment application, the Company recognizes your right to resign at any time for any reason, and retains the right to terminate the employment relationship at any time for any reason.

Chapman Aff., Ex. B.

The Statement is sufficiently prominent, as it is set off in a conspicuous manner, with a heading that reflects its content. *Nicosia,* 136 N.J. at 415, 643 A.2d 554.

As to clarity, the Statement properly avoids specialized legal terms, but it does not adequately put employees on notice that no matter what is said in the Handbook or Manual, the employer is utterly free to abandon its published procedures and fire an employee without progressive discipline, without cause, and without notice. *See Woolley,* 99 N.J. at 309, 491 A.2d 1257. The Statement does not reference the Handbook or Manual in general, nor the job security provisions in particular. It does not "unmistakably indicate," *id.* at 307, 491 A.2d 1257, that the Manual and Handbook sanction arbitrary and immediate discharge, nor that their discharge provisions are utterly without effect in the defendant's workplace. Upon reading this Statement and the Handbook or Manual, an employee could reasonably expect that the Airtron's "right to terminate the employment relationship at any time for any reason" must be read in light of the provisions of the Handbook offered the same day.

This court finds that when construed "in accordance with the reasonable expectations of the employees," *Woolley,* 99 N.J. at 298,

491 A.2d 1257, the Statement is not so straightforward "that no one could reasonably have thought [the manual] was intended to create legally binding obligations." *Id.* at 299, 491 A.2d 1257. *Nicosia,* 136 N.J. at 413, 643 A.2d 554.

### b. implied contract

██ Defendants argue further that even should the disclaimers be found ineffective, they are entitled to summary judgment as to plaintiff's first claim because no jury could find that Sellitto had a reasonable expectation that the progressive discipline provisions of the Manual and Handbook applied to him.

In *Witkowski, supra,* decided on the same day as *Nicosia,* the New Jersey Supreme Court considered an employee's claim that an employment manual created an implied contract under *Woolley.* The trial court had granted summary judgment in favor of the employer, but the Supreme Court reversed, reiterating that "under *Woolley,* the basic test for determining whether a contract of employment can be implied turns on the reasonable expectations of employees." *Witkowski,* 136 N.J. at 393, 643 A.2d 546.[5]

As here, the job security provisions of the employment manual at issue in *Witkowski* were detailed and comprehensive, and the employer had distributed the manual widely. Thus material issues of fact arose as to the reasonable expectations of employees and the existence of an implied contract, issues which could not be decided on a motion for summary judgment. *See Witkowski,* 136 N.J. at 399, 643 A.2d 546 (recognizing difficulty of deciding *Woolley* claims at summary judgment stage).

Defendants' motion for summary judgment is denied as to plaintiff's claim for a breach of the implied contract of employment, which is an issue of material fact to be determined at trial.

### 2. Breach of covenant of good faith and fair dealing

The second count of the Complaint asserts that Airtron's failure to provide plaintiff a performance evaluation in March 1991 violated the implied covenant of good faith and fair dealing. In his brief, plaintiff seeks to expand this count to encompass Airtron's failure to honor its progressive discipline procedures as described in the Handbook and Manual and its failure to support some of plaintiff's management initiatives.

Defendants contend first · that because there is no contract there can be no covenant; second, that even should an implied contract be found to exist, because the performance evaluations of all employees were postponed, the covenant as to Sellitto was not breached; third, Airtron's alleged failure to support plaintiff's management initiatives breached no covenant; and fourth, Airtron's failure to honor its progressive discipline procedures would violate express terms of the employment contract, therefore breaching the implied contract, not the implied covenant.

██ The New Jersey Supreme Court has recognized an implied covenant of good faith and fair dealing in every contract. *Onderdonk v. Presbyterian Homes of New Jersey,* 85 N.J. 171, 182, 425 A.2d 1057 (1981); *Bak–A–Lum Corp. of America v. Alcoa Building Products, Inc.,* 69 N.J. 123, 129–130, 351 A.2d 349 (1976). "Terms will be implied in a contract where the parties must have intended them because they are necessary to give business efficacy to the contract as written." *New Jersey Bank v. Palladino,* 77 N.J. 33, 46, 389 A.2d 454 (1978). *See Marini v. Ireland,* 56 N.J. 130, 265 A.2d 526 (1970) (intent of parties is of "primary importance" in determining what covenants are implied). In the absence of a contract, there is no implied covenant of good faith and fair dealing. *Noye v. Hoffmann–La Roche, Inc.,* 238 N.J.Super. 430, 570 A.2d 12 (App.Div.1990), *certif. denied,* 122 N.J. 146, 584 A.2d 218 (1990).

Defendants are correct that their failure to follow the progressive discipline procedures of the Handbook and Manual would violate express, not implied, terms of an employ-

---

**5.** "Certain factors ... will generally be relevant in determining whether such a manual creates a contract. Those ordinarily relate to both the manual's specific provisions and the context of its preparation and distribution." *Witkowski,* 136 N.J. at 392–93, 643 A.2d 546.

ment contract, if a jury finds such contract exists.

In opposition to the instant motion, plaintiff offers no facts showing the intention of the parties regarding the scheduling of performance evaluations or support for management initiatives. There is thus no material issue of fact. F.R.Civ.Proc. 56(e).

■ As a matter of law, in the absence of proof that the parties intended to contract for a performance evaluation in March 1991 or for Airtron's support of plaintiff's management initiatives, there can be no breach of an implied covenant of good faith and fair dealing. *See Fregara v. Jet Aviation,* 764 F.Supp. at 954, n. 8 (noting that New Jersey does not recognize cause of action for "negligent evaluation").

Defendant is granted summary judgment as to plaintiff's claim of breach of an implied covenant of good faith and fair dealing.

### 3. Negligent or intentional infliction of emotional distress

The third count of the Complaint contends that Airtron acted "to demoralize and discourage" plaintiff, and that upon the loss of his job Sellitto suffered extreme emotional anguish. Defendants argue that plaintiff has not established the elements of negligent or intentional infliction of emotional distress. For the reasons stated below, summary judgment is granted in favor of defendant.

*Intentional infliction*

■ New Jersey courts follow the definition of the *Restatement (2d) of Torts,* § 46 (1965) for the intentional infliction of emotional distress. *Buckley v. Trenton Saving Fund Soc.,* 111 N.J. 355, 544 A.2d 857 (1988). To prevail, a plaintiff must prove "intentional and outrageous conduct by defendant,[6] proximate cause, and distress that is severe."[7] *Id.* at 366, 544 A.2d 857, relying on M. Minzer, *Damages in Tort Actions,* vol. I, § 6.12 at 6–22 (1987). The act must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 366, 544 A.2d 857, quoting *Restatement, supra,* § 46, comment d.

■ Plaintiff has offered no evidence indicating that the circumstances of his discharge rise to the level of intentional and outrageous conduct. Even assuming that plaintiff was discharged in breach of an implied contract providing for progressive discipline, on the facts presented to this court, no jury could reasonably find that such conduct is "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community." *Id. See Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988) ("it is extremely rare to find conduct in the employment context which will rise to the level of outrageousness necessary to provide a basis for recovery"); *Cautilli v. GAF Corp.,* 531 F.Supp. 71 (E.D.Pa.1982) (denying summary judgment under New Jersey law for intentional infliction of emotional distress in employment context).

Nor has plaintiff demonstrated severe distress resulting from defendant's conduct. The Complaint alleges that plaintiff suffers "loss of sleep, inability to concentrate, loss of appetite, anxiety, nervousness, depression and other assorted debilitating physical and emotional ailments." In response to defendant's interrogatory regarding the factual basis for his claim, plaintiff failed to elaborate: "The emotional, physical and financial impact on my family and me has been enormous and severe." *See Fregara,* 764 F.Supp. at 957; *Buckley,* 111 N.J. at 369, 544 A.2d 857. This evidence is insufficient as a matter of law to establish mental distress that "was so severe no reasonable could be expected to endure it." *Id.* at 368, 544 A.2d 857.

*Negligent infliction*

■ The elements for proof of negligent infliction of emotional distress in New Jersey are

---

**6.** A defendant must intend both the act and the resulting distress. *Id.* at 366, 544 A.2d. 857.

**7.** The distress must be "so severe that no reasonable man could be expected to endure it." *Id.* at 366, 544 A.2d 857, quoting *Restatement, supra,* § 46, comment j.

**942**

(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress.

*Portee v. Jaffee,* 84 N.J. 88, 101, 417 A.2d 521 (1980). *See Carey v. Lovett,* 132 N.J. 44, 56, 622 A.2d 1279 (1993). The circumstances surrounding plaintiff's discharge do not satisfy the elements of negligent infliction of emotional distress.

While the New Jersey courts have occasionally upheld a claim for negligent infliction of emotional distress beyond the circumstances outlined in *Portee, see e.g. Strachan v. John F. Kennedy Memorial Hospital,* 109 N.J. 523, 538 A.2d 346 (1988) (recognizing parents' suffering resulting from hospital's negligent mishandling of son's corpse); *Giardina v. Bennett,* 111 N.J. 412, 545 A.2d 139 (1988) (parents may recover damages for emotional distress from still birth caused by medical malpractice), "a constant concern about the genuineness of the claim," *Buckley,* 111 N.J. at 365, 544 A.2d 857, has pervaded judicial analysis. Here, the circumstances of plaintiff's discharge do not merit an extension of the *Portee* standard.

*Conclusion*

The court grants defendants summary judgment as to plaintiff's claims for negligent or intentional infliction of emotional distress and breach of an implied covenant of good faith and fair dealing. The court denies summary judgment as to the sufficiency of the disclaimers and the existence of an implied contract for employment.