643 A.2d 546

EDWARD B. WITKOWSKI, PLAINTIFF–RESPONDENT, AND JANICE M. WITKOWSKI, PLAINTIFF, v. THOMAS J. LIPTON, INC., DEFENDANT–APPELLANT, AND JOSEPH DIRADDO AND EDWARD KEARNS, DEFENDANTS.

Argued January 3, 1994—Decided June 30, 1994.

*Francis X. Dee* argued the cause for appellant (*Carpenter, Bennett & Morrissey*, attorneys; *Mr. Dee* and *David J. Reilly*, on the briefs).

*Paul L. Kleinbaum* argued the cause for respondent (*Zazzali, Zazzali, Fagella & Nowak*, attorneys).

The opinion of the Court was delivered by

HANDLER, J.

In this case, an employee who worked as a maintenance mechanic for a manufacturing company with a large workforce was fired by his employer. The employee claims that his discharge was wrongful because the employment manual, which provides grounds and procedures for termination, constitutes an employment contract that was not followed in the employee's discharge. The employer claims that the employee's discharge was not wrongful. It contends that the employee was hired as an "at-will" employee who could be fired without cause.

This case, as does the companion case of *Nicosia v. Wakefern Food Corp.*, 136 *N.J.* 401, 643 *A.*2d 554 (1994), also decided today, requires the Court again to consider, in light of *Woolley v. Hoffman LaRoche*, 99 *N.J.* 284, 491 *A.*2d 1257, *modified*, 101 *N.J.* 10, 499 *A.*2d 515 (1985), the circumstances under which an employment manual may create an enforceable contract requiring the

employer to discharge an employee only for cause in accordance with the manual's provisions.

## I

Plaintiff Edward Witkowski ("Witkowski") was fired by defendant Thomas J. Lipton, Inc. ("Lipton") for theft when a can of oil was discovered in his locker. Witkowski denied that he had stolen the oil and asserted that under Lipton's employment manual he could not be fired without cause.

Witkowski and his wife filed a complaint against Lipton alleging, among other claims, wrongful discharge due to breach of contract based on Lipton's employment manual. Defendant moved for summary judgment, seeking dismissal of the complaint in its entirety. Defendant argued that Witkowski was an "at will" employee who could be fired without cause and that its manual did not express a comprehensive termination policy but merely provided some examples of terminable offenses and thus did not create an implied employment contract. Plaintiff Edward Witkowski opposed the motion, attacking solely the defense to the wrongful-discharge allegation of the complaint. The trial court found "as a matter of law that the [Lipton] manual ... was not intended to be a comprehensive treatment of the subject of employment termination and therefore there was no contract between plaintiff and defendant." Accordingly, it granted Lipton's motion for summary judgment.

Plaintiff appealed the decision to the Appellate Division, arguing that genuine issues of material fact existed regarding the existence of an employment contract based on the employment manual. That court, in an unreported *per curiam* opinion, reversed the judgment of the trial court and remanded, finding that the manual "created a factual question of an employment contract."

Defendant filed a petition for certification, which we granted. 134 *N.J.* 480, 634 *A.*2d 527 (1993). We affirm the judgment of the Appellate Division.

## II

Lipton hired Witkowski in June 1980 as a Class B Maintenance Mechanic. In October 1989, a routine United States Department of Agriculture inspection of employee lockers revealed that plaintiff's locker contained a can of CRC industrial 3.36 lubricating oil, a type of oil used on the "demand conveyor car clutches" at the Lipton plant. Lipton fired Witkowski on the grounds that he had stolen the lubricating oil. Witkowski denied that he had stolen the oil, claiming that he had permission from his supervisor to keep the oil in his locker. Despite his denial, Lipton discharged Witkowski based on the alleged theft.

When he was hired, Witkowski received an employment manual from Lipton's personnel department entitled "Your Life at Lipton—Flemington Plant" ("manual"). The Lipton manual is divided into four sections: Section I—"Introduction"; Section II—"General Information"; Section III—"Your Job & Your Earnings"; and Section IV—"Employee Rights." Section I of the Lipton manual describes the history of Lipton and contains a statement of Lipton's equal-employment-opportunity policy. Section III includes information detailing salaries, promotions and transfers, overtime, and layoffs. Section IV provides information concerning certain benefits available to Lipton employees.

Section II covers several policies, including safety and sanitation, medical services, personnel and attendance, and leaves of absence. Under the heading "Some Important Basics" and the subheading "Trial Period," Section II provides:

Time and effort are required on the part of an applicant seeking employment. Usually, considerable [sic] more of both is spent by the company. It is, therefore, in the best interests of both the applicant and the company that associations be entered into only when a mutually satisfactory and worthwhile relationship will occur.

To this end we try to learn everything about applicants which is relevant to their success on the job with Lipton. We likewise try to inform applicants about the job and company requirements and benefits in order that they may decide whether or not they wish to accept employment.

This careful manner of applicant selection before employment has proven successful over the years. The best judgement, however, does not always fully replace

actual performance on the job. It is our policy, therefore, to treat the first three months of employment as a trial period during which time supervisors will be expected to decide whether or not to consider the employee qualified to become a regular employee.

The last page of Section II, under the heading "Warning Notices," provides:

In fairness to both employees and the company we have a system of warning notices for violation of company policies or rules. Employees with poor records for lateness, absence, infringement of company rules or sanitation and safety regulations will be spoken to by their supervisor. A second infraction will mean a written warning, a copy of which is filed with the Personnel Department.

If the employee's record does not improve sufficiently, he or she will receive a second written warning notice. The third written notice constitutes grounds for dismissal. In some situations, depending on the seriousness of the rules' infraction, a suspension from work may be given in addition to the first or second notice.

Some violations of company policies are grounds for immediate dismissal. Some examples of these include:

1. Being unfit for work because of excessive use of intoxicants
2. Consuming intoxicants on the premises
3. Professional gambling on company premises
4. Fighting, wrestling and "horseplay" on premises
5. Clocking the time card of another employee
6. Insubordination
7. Stealing or unauthorized possession of Company property

The alleged violation of company policy that constituted the grounds for Witkowski's immediate dismissal was that encompassed by the seventh example: "Stealing or unauthorized possession of Company property."

### III

The overriding issue presented is whether the Lipton manual created an employment contract that conferred on plaintiff the right to be discharged only in accordance with the terms of the manual. The Appellate Division reviewed the Lipton manual and found that the evidence would support a determination that the manual established an implied employment contract that governed termination of employment. We agree.

■ An employment manual providing terms and conditions of employment that include grounds and procedures for dismissal can create an employment contract. This Court held in *Woolley* that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." 99 *N.J.* at 285–86, 491 *A.*2d 1257. Therefore, the Court ruled that the termination clause of the company's employment handbook, including the procedure required before termination, could be contractually enforced.

The Court in *Woolley* explained that "[a] policy manual that provides for job security grants an important, fundamental protection for workers." *Id.* at 297, 491 *A.*2d 1257. In that case, the termination policy was "definite," *id.* at 305 n. 12, 491 *A.*2d 1257, "explicit and clear," *id.* at 306, 491 *A.*2d 1257, and provided "a fairly detailed procedure," *id.* at 287 n. 2, 491 *A.*2d 1257. Hence, the Court reasoned "job security provisions contained in a personnel policy manual widely distributed among a larger workforce are supported by consideration and may therefore be enforced as a binding commitment of the employer." *Id.* at 302, 491 *A.*2d 1257.

■ The key consideration in determining whether an employment manual gives rise to contractual obligations is the reasonable expectations of the employees. "When an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially, job security provisions)," courts should continue and enforce that manual "in accordance with the reason-able expectations of the employees." *Id.* at 297–98, 491 *A.*2d 1257.

■ No categorical test can be applied in determining whether an employment manual when fairly read gives rise to the reasonable expectations of employees that it confers enforceable obligations. Certain factors, however, will generally be relevant in determining whether such a manual creates a contract. Those ordinarily relate to both the manual's specific provisions and the

context of its preparation and distribution. *Id.* at 299, 491 *A.*2d 1257. An established employment manual that expresses " 'company-wide employer policy' " may give rise to an implied contract of employment if its provisions "contain an express or implied promise concerning the terms and conditions of employment." *Gilbert v. Durand Glass Mfg. Co., Inc.,* 258 *N.J.Super.* 320, 330, 609 *A.*2d 517 (App.Div.1992) (quoting *Shebar v. Sanyo Business Sys. Corp.,* 218 *N.J.Super.* 111, 120, 526 *A.*2d 1144 (App.Div.1987), *aff'd,* 111 *N.J.* 276, 544 *A.*2d 377 (1988)); *see Woolley, supra,* 99 *N.J.* at 302, 491 *A.*2d 1257; Kevin C. Donovan & David J. Reilly, *Employment "By the Book" in New Jersey: Woolley and Its Progeny,* 22 *Seton Hall L.Rev.* 814, 826 (1992) (observing that under *Woolley* "an explicit statement of a specific, detailed employer policy, not undermined by any other language in the handbook, is required to establish that the employer is clearly waiving its right to discharge without cause"). However, in *Woolley,* "[w]ithout minimizing the importance of [the manual's] specific provisions," the Court also emphasized that the Hoffman–La Roche employment manual created an implied contract of employment because of "the context of the manual's preparation and distribution." 99 *N.J.* at 299, 491 *A.*2d 1257.

In sum, under *Woolley,* the basic test for determining whether a contract of employment can be implied turns on the reasonable expectations of employees. A number of factors bear on whether an employee may reasonably understand that an employment manual is intended to provide enforceable employment obligations, including the definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution.

Lipton contends that its manual did not contain a comprehensive termination policy and thus did not create a contract because the provision relating to termination listed only seven examples of terminable offenses, which could not be understood or construed by an employee to be binding or to prohibit the firing of an employee without cause.

The trial court found that "[t]his case is *not* like *Woolley* where the employment manual contains specific procedures and guidelines for termination." The court noted that the manual did not expressly delineate *all* grounds for immediate dismissal: "By the very language of the employee manual, Lipton leaves the possibility open that there may be other grounds for immediate dismissal and that only ... 'some examples' ... are merely a portion of the grounds."

The Appellate Division concluded that the trial court's interpretation of the termination policy was "too narrow," and "although the list [of terminable offenses] is not exhaustive, other grounds would be limited by the construction principle that they fall into the same class or category of violation." We concur in the Appellate Division's analysis and conclusion.

▪ Comprehensiveness of job-security provisions is just one of several factors for a court to consider in determining whether that policy gives rise to an implied contract under *Woolley.* The Court in *Woolley* observed that that manual contained a "fairly detailed procedure to be used before an employee may be fired for cause." 99 *N.J.* at 287 n. 2, 491 *A.*2d 1257. However, the Court found that the list of terminable offenses enumerated in the Hoffman–La-Roche manual set guidelines for determining what constituted cause for termination, *id.* at 310–13, 491 *A.*2d 1257, and that the overall termination policy was "explicit and clear," *id.* at 306, 491 *A.*2d 1257. Nowhere did the Court imply that a termination policy must be set forth exhaustively or list every "just cause" ground for termination to find that the job-security provision contained in the manual could give rise to employees' reasonable expectations of that provision's enforceability.

In *Preston v. Claridge Hotel & Casino,* 231 *N.J.Super.* 81, 555 *A.*2d 12 (App.Div.1989), the employer attempted to distinguish its termination policy from that in *Woolley,* arguing that the Hoffman–LaRoche policy was "more detailed and go[es] to greater length to spell out 'just cause'" .than did that of Claridge's employee handbook. *Id.* at 85, 555 *A.*2d 12. The court reasoned

that although the company's policies did not "expressly declare that employees will be fired only for just cause," such a contract was created because of the existence of several *Woolley* factors: the handbook was widely distributed; employees were required to read and sign employee handbook "acknowledgement form"; the manual contained a four-step progressive-discipline procedure and enumerated "types of prohibited conduct"; and the handbook made various representations of "maximum job security." *Ibid.; see House v. Carter–Wallace, Inc.*, 232 *N.J.Super.* 42, 55, 556 *A.*2d 353 (App.Div.), *certif. denied,* 117 *N.J.* 154, 564 *A.*2d 874 (1989); *see also Schwartz v. Leasametric, Inc.*, 224 *N.J.Super.* 21, 31, 539 *A.*2d 744 (App.Div.1988) (holding that employment manual with termination policy that provided non-exhaustive list of dischargeable offenses as well as three-step progressive-discipline procedure gave rise to implied contract); *cf. Kane v. Milikowsky*, 224 *N.J.Super.* 613, 541 *A.*2d 233 (App.Div.1988) (ruling that employer's one-page memorandum, which listed twenty-seven terminable offenses, that was not widely distributed did not constitute an implied promise to fire only for just cause); *Radwan v. Beecham Laboratories*, 850 *F.*2d 147, 149, 151 (3d Cir.1988) (holding no implied contract where termination policy that provided dismissal for cause "may include, but is not limited to" six examples because manual's "'fairly detailed enumeration of grounds for dismissal with cause' is not exclusive") (quoting *Woolley, supra,* 99 *N.J.* at 287 n. 2, 491 *A.*2d 1257); Donovan & Reilly, *supra,* 22 *Seton Hall L.Rev.* at 827 (finding that *Kane* "memorandum contained neither a comprehensive treatment of the subject of termination nor clear and specific job security provisions—key prerequisites to a *Woolley* contract—and therefore no enforceable promise existed").

In this case, Lipton distributed its manual to all employees. The wide distribution of the manual indicates that Lipton understood that it would be read and considered by all its employees. *See Woolley, supra,* 99 *N.J.* at 298, 491 *A.*2d 1257 (finding that although employment manual had been distributed to only 300 of 3,000–person workforce, employer clearly intended that manual apply to all employees). We can infer that Lipton sought to gain

the cooperation and loyalty of its employees by creating the employment manual and through its wide dissemination reasonably demonstrated its intent that the manual apply to the entire workforce.

In addition, the specific provisions of the manual relating to job security are sufficiently definite and comprehensive, thereby reinforcing the conclusion that Lipton intended those provisions to be regarded by its workforce as enforceable. *See Gilbert, supra,* 258 *N.J.Super.* at 257, 609 *A.*2d 517. The manual's terms cover all employees. *See Woolley, supra,* 99 *N.J.* at 298, 491 *A.*2d 1257. The manual distinguishes between "trial employees" and "regular employees," indicating that a new employee must be "qualified to become a regular employee." It was clearly reasonable for Lipton employees to expect that if an employee successfully completes the three-month "trial" period and "qualifie[s]" as a "regular employee," he or she then would be considered a "regular employee" subject to the duties and entitled to the benefits and safeguards of "regular" employees. *See Fregara v. Jet Aviation Business Jets,* 764 *F.Supp.* 940, 950 (D.N.J.1991) (noting argument that "if the company expressly reserves the right to fire for any reason during the probationary period, then the employee who survives has earned the protection of a 'just cause requirement' for termination"); *Beales v. Hillhaven, Inc.,* 108 *Nev.* 96, 825 *P.*2d 212, 216 (1992) (noting that distinction between "permanent" and "probationary" employee status "should be considered as one fact in determining if the employee is something other than at will, [but] this designation alone is insufficient to change the presumption of at will employment"); Andrew D. Hill, *"Wrongful Discharge" and the Derogation of the At–Will Doctrine* 116 (1987) (noting that handbook that provides "probationary period" may imply that after probationary period had been successfully completed, employee can be terminated only for just cause).

Furthermore, the employment conditions that apply to "regular employees" include those in the section under "Warning Notices," which delineates seven employment infractions that will result in

"immediate" dismissal. Similar to the manual in *Preston, supra,* the Lipton manual also provides a progressive discipline procedure. 231 *N.J.Super.* at 86, 555 *A.2d* 12; *see Pine River State Bank v. Mettille,* 333 *N.W.2d* 622 (Minn.1983) (finding implied contract based on manual in part because of definite and detailed four-step disciplinary procedure); *cf. Johnston v. Panhandle Coop. Ass'n,* 225 *Neb.* 732, 408 *N.W.2d* 261, 268 (1987) (finding no implied contract based on manual because it failed to provide any "disciplinary procedures short of termination"). *See generally* Ira M. Shepard et al., *Without Just Cause: An Employer's Practical and Legal Guide on Wrongful Discharge* 207 (1989) (noting that employers are not required to establish "a formal progressive discipline policy," but that "judges and juries expect employers to provide their employees with reasonable notice of shortcomings and an opportunity to correct them").

In conclusion, the Lipton manual's wide distribution and the definiteness and comprehensiveness of its termination policy could reasonably lead an employee to expect that the manual created enforceable employment obligations.

Finally, Lipton claims that if this Court finds that an implied employment contract arises from its manual under these circumstances, the employment-at-will presumption will be nullified in New Jersey. It argues that *any* manual that broadly deals with employee relations will now "give rise to an implied contract to discharge only for cause, even if the manual does not promise continued employment and does not contain a comprehensive termination policy."

In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. *English v. College of Medicine & Dentistry,* 73 *N.J.* 20, 23, 372 *A.2d* 295 (1977). An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise. *See Bernard v. IMI Sys., Inc.,* 131 *N.J.* 91, 105–06, 618 *A.2d* 338 (1993) ("Today, both employers and employees commonly and

reasonably expect employment to be at-will, unless specifically stated in explicit, contractual terms."); *Erickson v. Marsh & McLennan Co., Inc.*, 117 *N.J.* 539, 561, 569 *A.*2d 793 (1990) ("A 'contentious' 'at-will' employee can be fired but it is not illegal."); *Velantzas v. Colgate–Palmolive Co.*, 109 *N.J.* 189, 191, 536 *A.*2d 237 (1988) ("An employer can fire an at-will employee for no specific reason or simply because an employee is bothering the boss.").

The employment-at-will doctrine does have exceptions, however. For example, an employer may not fire a worker for a discriminatory reason. *See, e.g., N.J.S.A.* 10:5–1 to –28 (prohibiting discrimination on basis of race, creed, sex, age, marital status, ancestry, national origin, family status, or sexual orientation). Similarly, an employer may not fire an employee if the "discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 73, 417 *A.*2d 505 (1980) ("[E]mployers will know that unless they act contrary to public policy, they may discharge employees at will for any reason.").

*Woolley*, unlike those statutory and judicial exceptions to the employment-at-will doctrine, affirms the at-will presumption. It recognizes that "as always, the employer and employee are free to contract for terms and conditions of employment, such as termination only 'for cause.'" Donovan & Reilly, *supra*, 22 *Seton Hall L.Rev.* at 816; *see also McQuitty v. General Dynamics Corp.*, 204 *N.J.Super.* 514, 520, 499 *A.*2d 526 (App.Div.1985) ("*Woolley* is not ... 'an exception to the at-will doctrine' ... but, rather, a recognition of basic contract principles concerning acceptance of unilateral contracts.").

As this Court in *Woolley* recognized in its discussion of New Jersey's employment-at-will rule:

> [T]he issue is not whether the rules applicable to individual lifetime or indefinite long-term employment contracts should be changed, but rather whether a correct understanding of the "underlying interests involved" ... in the relationship between the employer and its workforce calls for compliance by the employer with certain rudimentary agreements voluntarily extended to the employees.

[99 *N.J.* at 292, 491 *A.*2d 1257 (quoting *Pierce, supra,* 84 *N.J.* at 291, 417 *A.*2d 505).]

Consequently, under *Woolley,* if a plaintiff can prove that an employment manual containing job-security and termination procedures could reasonably be understood by an employee to create binding duties and obligations between the employer and its employees, the manual will constitute, in effect, a unilateral offer to contract that an employee may accept through continued employment. 99 *N.J.* at 309, 491 *A.*2d 1257. Only in those circumstances will an employment manual overcome the presumption that the employment is at will.

## IV

We conclude that the matter should be remanded for a jury to determine whether an employee could reasonably expect that the Lipton manual provided job security, thereby creating an implied contract of employment. *See Giudice v. Drew Chem. Corp.,* 210 *N.J.Super.* 32, 36, 509 *A.*2d 200 (App.Div.) (noting that *Woolley* claims tend to present questions of material fact, thereby precluding summary judgment), *certif. denied,* 104 *N.J.* 465, 517 *A.*2d 449 (1986). The Appellate Division, correctly ruling that "the terms and conditions of the employee manual create a factual question of an employment contract," reversed the trial court's summary judgment in favor of defendant. The court reasoned that a jury could find that the comprehensive nature of the job security provisions of the Lipton manual and its wide distribution created an implied contract of employment.

If the fact-finders determine that a contract exists, the jury must then determine whether under the employment manual Witkowski was guilty of "[s]tealing or unauthorized possession of Company property" by having the can of oil in his locker. *See Cooper v. Singer,* 118 *N.J.L.* 200, 202, 191 *A.* 849 (E. & A.1937) (holding that whether foreman was fired because of employer's dissatisfaction or some other reason was jury issue); *Jorgensen v. Pennsylvania R.R. Co.,* 38 *N.J.Super.* 317, 338, 118 *A.*2d 854

(App.Div.1955) (ruling that whether employee discharged for appropriating company property was factual issue for jury), *certif. denied,* 20 *N.J.* 308, 119 *A.*2d 791 (1956); *see also Toussaint v. Blue Cross & Blue Shield,* 408 *Mich.* 579, 292 *N.W.*2d 880, 896 (1980) ("The jury is always permitted to determine the employer's true reason for discharging the employee."); 1 Lex K. Larson & Philip Borowsky, *Unjust Dismissal* § 9.02[3] (1993) ("Allowing the trier of fact to decide the issue in cases where the reason for discharge is disputed will more effectively balance the rights of employers and employees.").

As the Appellate Division properly noted in reversing the trial court's grant of summary judgment, "plaintiff was charged with a listed example, stealing or unauthorized possession of Company property. Whether he was guilty of this violation is a contested matter which cannot be determined on summary judgment." If he is guilty of the alleged offense, then Lipton can terminate him for cause.

In addition, we note that the Lipton manual contains a purported disclaimer. Under *Woolley* an implied contract based on an employment manual may be negated by the inclusion of a clear and prominent disclaimer. 99 *N.J.* at 285, 491 *A.*2d 1257; *Nicosia, supra,* 136 *N.J.* at 412, 643 *A.*2d at 559. However, in its motion for summary judgment defendant did not ask the court to address the adequacy of the manual's disclaimer: "Our position is that even without a disclaimer, the manual in our case ... does not meet the standards of *Woolley.*" The existence and enforceability of that disclaimer was not adjudicated below. As defendant stated, "there's a fact issue with respect to that [disclaimer] ... we understand that ... and on summary judgment ... do not ask the Court to resolve the fact issue." As noted, the only issue determined by the trial court was whether the Lipton manual creates an implied employment contract. At the trial below the issue whether the disclaimer is effective to overcome the conditions of the manual will have to be resolved. We have considered that question in the companion case of *Nicosia, supra,* at 412, 643

A.2d at 559, and that opinion should govern the trial court's disposition of the "disclaimer" issue.

V

The Appellate Division judgment is affirmed and the matter remanded for further proceedings.

*For affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI and STEIN—7.

*Opposed* —None.