

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2006

# Brokenbaugh v. Exel Logistics NA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4106

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Brokenbaugh v. Exel Logistics NA" (2006). *2006 Decisions*. Paper 1467.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1467

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 04-4106

———————

WILLIAM T. BROKENBAUGH,
Appellant

v.

EXEL LOGISTICS NORTH AMERICA, INC.,
a corporation; JANE DOE, Individually;
JOHN DOE

———————

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 01-cv-02273)
District Judge:  Hon. Robert B. Kugler

———————

Argued January 25, 2006

BEFORE:  RENDELL and STAPLETON,
Circuit Judges, and POLLAK,* District Judge

(Opinion Filed March 9, 2006)

———————

Dennis K. Kuroishi (Argued)
7 East Kings Highway
Mt. Ephraim, NJ  08059
 Attorney for Appellant

———————

*Hon. Louis H. Pollak, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Patricia A. Smith (Argued)
Ballard, Spahr, Andrews & Ingersoll
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ  08043-4636
  Attorney for Appellee

---

## OPINION OF THE COURT

---

STAPLETON, Circuit Judge:

William Brokenbaugh is an African-American male who worked for Defendant Exel Logistics ("Exel") for 13 years as a forklift operator.  On May 25, 2000, Exel terminated his employment.  He was 40 years old at the time.  Brokenbaugh claims that he was unlawfully fired because of his race, his gender, and/or his age.  Exel claims that it reached its decision to fire Brokenbaugh because an incident of perceived dishonesty with a supervisor concluded a long story of persistent misconduct on the job.  The District Court granted summary judgment in favor of the employer.  We agree that summary judgment was appropriate.

In the years leading up to May 25, 2000, Exel recorded numerous incidents of workplace misconduct by Brokenbaugh.  In October 1994, Brokenbaugh tested positive for cocaine while on the job.  In October 1997, he received a warning for having threatened a co-worker.  In August 1998, Brokenbaugh was involved in an accident with

his forklift. While there was no property or personal damage, Exel tested Brokenbaugh for drugs and he again tested positive for cocaine. Two months later, in November 1998, Brokenbaugh for a third time tested positive for cocaine while on the job. In December 1998, Brokenbaugh and Exel's General Manager signed a document in which Brokenbaugh promised to participate in drug rehabilitation. In 1999, Brokenbaugh continued to receive warnings from Exel for misconduct – once for having performed his duties in a careless manner and once for insubordination. In January 2000, he was again warned for performing substandard work. In May 2000 – days before his termination – he was warned for having threatened the same co-worker whom he had been warned for threatening in 1997. These instances were documented by written warnings that cite the company "work rule" that had been violated and that were signed and dated by Brokenbaugh and his supervisors.

Brokenbaugh is afflicted with glaucoma which caused him to suffer severe migraine headaches from time to time. He would relieve his headaches by taking aspirin, resting for a period of time, and engaging in relaxing activities. An activity he found relaxing was washing cars of his fellow employees. Early in the day on May 25, 2000, Brokenbaugh told a supervisor that he had a migraine headache and obtained permission to leave the workplace. As he was leaving, Brokenbaugh ran into a co-worker, Virginia Tighe, whose car he had an appointment to detail that evening. Instead of waiting until the evening, he drove the car to his home, rested for a couple of hours to allow the

headache to subside, and then detailed Tighe's car. He returned to the job site at 4:00 p.m. to drop off the car. Brokenbaugh did not attempt to collect compensation for the time he took off.

During that day at Exel, Michelle Burden, Brokenbaugh's supervisor, received a complaint from a colleague that Brokenbaugh was not out sick, as he had claimed, but rather that he had left work in order to detail Tighe's car. After she confirmed with Tighe that Brokenbaugh was detailing her car, Burden wrote a memo to Exel's General Manager, Scott Dintiman, outlining the situation. Dintiman and Exel's Regional Human Resources Manager for the Northeast, Alan Schaefer, confirmed the facts with Burden and Tighe and discussed what action should be taken. Schaefer, who was not familiar with Brokenbaugh, reviewed his personnel record and concluded that he had a "very checkered past" at Exel. App. at 208a. In order to confirm what had happened before they took action, Schaefer and Dintiman decided to wait and see if Brokenbaugh returned with Tighe's car.

According to Brokenbaugh, when he returned to work with the car, Burden directed him to Dintiman's office. He was told that "because it appeared that Brokenbaugh had gone home to detail a car, Brokenbaugh was being suspended for dishonesty." Br. Appellant at 9. Brokenbaugh describes the meeting as one-sided – that "Dintiman did not allow Mr. Brokenbaugh to get a word in edgewise" which was not in accord with Exel's practice for dealing with infractions. *Id.* Exel describes the meeting

4

similarly, but notes that Brokenbaugh admitted to Dintiman that he had detailed Tighe's car, and that Dintiman said that he believed that Brokenbaugh had deceived Burden in order to do this. In handwritten notes on the memo from Burden, Dintiman recorded that "I indicated that this was an issue with honesty & distrust. I informed him that he was being suspended & we would contact him when a decision was made." App. at 640. Brokenbaugh subsequently received a letter dated May 31, 2000, from Exel stating that his employment was being terminated for violating "work rule #1" which identifies as grounds for immediate discharge:

> Dishonesty of any kind, including, but not limited to, falsifying employment data, reports, timecards, or time records. Knowingly punching another associate's timecard is a violation of this rule.

District Ct. Op., App. at 10, App. at 632.

Brokenbaugh sued in the United States District Court in New Jersey claiming that he was terminated because of discrimination on account of his race, gender, and age in violation of the New Jersey Law Against Discrimination ("NJLAD") and racial discrimination in violation of 42 U.S.C. § 1981. He also asserted claims based on common law wrongful discharge and breach of employment contract. After discovery, both Exel and Brokenbaugh moved for summary judgment.

The District Court granted summary judgment in favor of Exel on all claims. The Court applied the three-part burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate Brokenbaugh's discrimination

claims under the NJLAD and § 1981. Applying the three-part, burden-shifting framework, the District Court either found or assumed with respect to each claim that Brokenbaugh had established his prima facie case of discrimination and that Exel had satisfied its burden of offering a legitimate non-discriminatory reason for his firing, *i.e.*, that Brokenbaugh's dishonesty with his supervisor on May 25, 2000, was "the last straw" – the breaking point for Brokenbaugh's heavy load of workplace infractions. On the third step of the *McDonnell Douglas* framework, the District Court concluded that Brokenbaugh had not demonstrated that Exel's proffered reasons were pretext for discrimination. The Court granted summary judgment in favor of Exel on Brokenbaugh's discrimination claims, as well as his common law claim of wrongful discharge and his breach of contract claim.[1]

Brokenbaugh makes four arguments on appeal. With respect to his discrimination claims, he argues (1) that the District Court considered materials that under Federal Rule of Civil Procedure 56(e) could not be properly considered in support of a motion for summary judgment; (2) that the District Court misperceived the governing law; and (3) that – even assuming the District Court applied the correct legal standards – it misapplied that law. Brokenbaugh also claims (4) that the District Court improperly granted summary judgment on his breach of contract claim.

The District Court properly exercised jurisdiction under 28 U.S.C. §§ 1331, 1367

---

[1] Brokenbaugh does not appeal the District Court's decision regarding his common law wrongful discharge claim.

and our appellate jurisdiction rests on 28 U.S.C. § 1291 as the grant of summary judgment was a final order of a District Court. Our review of grants of summary judgment is plenary and we "must apply the same test employed by the District Court under Federal Rule of Civil Procedure 56(c)." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 (3d Cir. 2005). "In reviewing the grant of a motion for summary judgment, we (i) resolve conflicting evidence in favor of the nonmovant, (ii) do not engage in credibility determinations, and (iii) draw all reasonable inferences in favor of the nonmovant." *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## I.

Brokenbaugh argues that the District Court considered hearsay and otherwise inadmissible materials in violation of Federal Rule of Civil Procedure 56(e). The materials he challenges were before the court in an attachment to a sworn statement of Alan Schaefer. The materials are numerous documents from Brokenbaugh's personnel file chronicling his history of workplace misconduct. Brokenbaugh argues that Schaefer's sworn statement that these are "true and correct" copies of company documents is not sufficient because it "attempts to 'certify' as to information not within the personal knowledge of the putative affiant." Br. Appellant at 16.

In granting or denying a motion for summary judgment, courts consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" provided by the parties. Fed. R. Civ. P. 56(c). The Federal Rules instruct:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed. R. Civ. P. 56(e). Brokenbaugh insists that Schaefer was not competent to testify to the matters within Brokenbaugh's personnel file because Schaefer lacked any personal knowledge of their truth.

Brokenbaugh is mistaken. Schaefer was competent to testify to the matters within the personnel file for the purpose of establishing Exel's motivation to discharge Brokenbaugh. When offered to show why Exel decided to fire Brokenbaugh, the out-of-court statements in Brokenbaugh's personnel file were not "offered in evidence to prove the truth of the matter asserted" and, thus, were not hearsay. *See* Fed. R. Evid. 801(c). Schaefer had the personal knowledge necessary to competently testify about the contents of Brokenbaugh's file and how they influenced Exel's decision. *See Capobianco v. City of New York*, 422 F.3d 47, 55-56 (2d Cir. 2005) (finding that a document in a personnel file of an ADA discrimination plaintiff was admissible to show the employer's state of mind in firing him and thus properly considered at summary judgment in accord with Rule 56(e)); *Aucutt v. Six Flags over Mid-America, Inc.*, 85 F.3d 1311, 1317 (8th Cir. 1996) (finding an affidavit of a supervisor containing a third party's description of an incident involving a discrimination plaintiff was properly considered under Rule 56(e) because the affidavit "was based on [the supervisor's] personal knowledge of the reasons

underlying the challenged employment decision").[2]

## II.

Brokenbaugh contends that the District Court did not correctly understand what a plaintiff in his position must tender in order to survive summary judgment. Specifically, he contends that under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), and the 1991 Amendments to the Civil Rights Act as interpreted in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), he needed only to tender evidence from which a factfinder could infer by a preponderance of the evidence that race, gender, and/or age was one factor that played a role in Exel's decision, *i.e.*, that it was a "motivating" factor and not necessarily the "determinative" one. Under these authorities, according to Brokenbaugh, once he tendered such evidence, Exel had the burden of showing that it would have made the same termination decision even in the absence of one or more of these motivating factors.

We may assume for present purposes that these Title VII authorities are generally applicable to discrimination claims based on 42 U.S.C. § 1981 and the NJLAD and that

---

[2]Brokenbaugh also contends that the affidavit provided by Alan Schaefer was defective because it "failed to include the jurat, acknowledgment, notarization or any other indication that Mr. Schaefer swore or affirmed the text of the affidavit before a person authorized to administer oaths." Br. Appellant at 16. In response, Exel points out that it resolved this issue by submitting a supplemental "Schaefer Declaration" that contained the same information as the affidavit in a form that complied with 28 U.S.C. § 1746. We agree with Exel. The supplemental "Schaeffer Declaration" satisfies the requirements of 28 U.S.C. § 1746 and thus is a valid affidavit for purposes of Rule 56. *See United States v. 225 Cartons, More or Less, of an Article or Drug*, 871 F.2d 409, 414 n.4 (3d Cir. 1989) ("These [declarations] were filed under penalty of perjury pursuant to 28 U.S.C. § 1746 (1982) and thus satisfy the affidavit requirement of Rule 56.").

they are specifically applicable to the case reflected in this record. While those propositions are by no means clear,[3] we may assume *arguendo* that they are because Brokenbaugh has not tendered evidence, direct or circumstantial, from which a factfinder could reasonably infer that race, gender, and/or age was even a "motivating" factor in Exel's decision. In short, both of the authorities Brokenbaugh invokes would require him to produce evidence from which a factfinder could reasonably conclude that an impermissible factor like race, gender, or age played at least some role in Exel's decision making process or evidence by which a factfinder could reasonably disbelieve Exel when it says it fired him for misconduct. Under either of the legal standards he invokes, his claim would still fail as the evidence he has presented would not allow a jury to reasonably reach either conclusion.

We note that the District Court's statement of the governing law gave Brokenbaugh the benefit of the rule he seeks:

> Where . . . the employer has proffered a legitimate nondiscriminatory reason for its action the plaintiff must point to some evidence, direct or

---

[3]The 1991 Amendments to the Civil Rights Act by their terms are, of course, not applicable to § 1981, and *Desert Palace* does not suggest that they affect anything other than Title VII liability. The Supreme Court of New Jersey has not yet had occasion to address the issue of whether New Jersey law under the NJLAD will follow these Title VII amendments. *See Meyers v. AT&T*, 882 A.2d 961, 970-71 (N.J. Super. Ct. App. Div. 2005). ("The Third Circuit has not directly addressed the issue. Nor is there guidance from our own Supreme Court concerning how the decision in *Desert Palace* might alter its analysis . . . [in] mixed motive cases.") Finally, as we note hereafter, this record contains no "direct evidence" of discrimination as the kind necessary under *Price Waterhouse* to absolve a plaintiff of the duty to show "but for" cause – *i.e.*, that an impermissible consideration was a "determinative" cause.

10

> circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

District Ct. Op., App. at 28 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Under this statement of the governing rule, Brokenbaugh could escape summary judgment by tendering evidence of pretext (which would permit an inference satisfying either causation standard) or other evidence that would support an inference of *either* "a motivating cause" *or* "a determinative" one. Turning to the record, we find that Brokenbaugh tendered no such evidence.

### III.

As we have indicated, Exel insists that Brokenbaugh was terminated because it believed that he had been dishonest with his supervisor on May 25, 2000, and that this was but one in a long line of other serious work infractions. The evidence regarding the information that Exel's decision makers, its General Manager and Regional Human Resources Manager, considered in making the discharge decision is undisputed both with respect to events of May 25th and with respect to Brokenbaugh's work history. With respect to the former, they were reliably advised or personally observed that Brokenbaugh had asked his superior if he could be excused from work because he was ill, that he had then taken a co-worker's car to detail with him as he left, and that he had returned the detailed car to the co-worker at the end of the day. With respect to Brokenbaugh's record, his personnel file disclosed the following:

11

8/19/94 – Brokenbaugh warned for testing positive for cocaine.
10/3/97 – Brokenbaugh warned for threatening a co-worker.
8/3/98 – Brokenbaugh warned for forklift accident, testing positive for cocaine.
11/2/98 – Brokenbaugh tested positive for cocaine.
12/2/98 – Brokenbaugh signs agreement with company to get rehab to keep his job.
5/11/99 – Brokenbaugh warned for performing duties in a careless manner.
11/4/99 – Brokenbaugh warned for insubordination.
1/10/00 – Brokenbaugh warned for substandard work.
5/22/00 – Brokenbaugh warned for threatening the same employee as in 1997.

It is thus clear that from the perspective of Exel's decision makers there was ample cause for Brokenbaugh's discharge.

Brokenbaugh's principal response is that he did nothing wrong on May 25th because he did have a migraine headache that morning when he spoke to his supervisor and because there was no work rule requiring that he return to work that day so long as he did not ask to be paid for the day. There is evidence that would support such a finding. In the context of this record, however, that evidence does not speak to the pretext issue, or give rise to an inference of intentional discrimination. To show pretext, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). The pretext issue is not whether Exel had cause to terminate Brokenbaugh, but rather whether it believed it had such cause and acted upon that belief. The uncontradicted and contemporaneously documented evidence indicates that Exel's decision makers believed that he had a long history of misbehavior and that he had lied to

12

his supervisor. Indeed, when Brokenbaugh was asked at his deposition whether he thought that Exel's General Manager Scott Dintiman believed that he had gone home in order to detail a car rather than because of sickness, Brokenbaugh acknowledged that he believed Dintiman had reached that conclusion; he argued only that Dintiman was wrong to have done so. In this context, evidence which supports only an inference that the employer was wrong will not support a finding of pretext.

Brokenbaugh also contends that pretext can be inferred from Exel's letter of May 31, 2000, which identified dishonesty as the reason for his discharge, but not his long history of workplace infractions. He points out that "[i]f a plaintiff demonstrates that the reason given for [his] termination did not remain consistent . . . this may be viewed as evidence tending to show pretext." *See, eg., Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 284 (3d Cir. 2001). This is, of course, true, but, in context, a trier of fact could not reasonably conclude here that the difference between Exel's May 31, 2000, letter and its position in this suit was probative of whether its "last straw" explanation was a pretext for race, gender, and/or age discrimination. That letter informed Brokenbaugh that his employment was being terminated for dishonesty, and this was in fact the cause of his discharge even if it was viewed in light of his prior offenses. His earlier offenses, though numerous and serious, had not resulted in his being fired, and he would not have been fired but for the perceived dishonesty. The letter was thus not inconsistent with Exel's explanation in this litigation regarding what motivated its

13

decision, at least not in a way that would support an inference of pretext.

Finally, Brokenbaugh insists that an inference that race, gender, and/or age played a role in Exel's decision can be drawn from his evidence regarding "comparators" – other employees not members of his race, gender or age group who he claims were treated more favorably. Brokenbaugh identifies 19 employees at Exel who he claims were similarly situated and had been treated with more leniency than Brokenbaugh. After reviewing the evidence, we find no evidence of an employee at Exel that had amassed a record so replete with workplace infractions that he or she might be considered similarly situated to Brokenbaugh. Nor did any of the employees Brokenbaugh identifies engage in misconduct for as long as he did.[4] The two employees whose records come the closest to Brokenbaugh's – Patrick Beals and Gene Gurlin – were also discharged for their misconduct and do not appear to have been tolerated for as long as Brokenbaugh.

This is a case in which the employee claiming discrimination worked for the employer for 13 years. He does not claim that any of his previous workplace infractions were the product of bias or, indeed, that anything else that happened in the workplace prior to May of his 13th year reflects impermissible discrimination at work. The only reasonable inference to be drawn from the evidence is that such discrimination played no

---

[4]Brokenbaugh points to several employees who had amassed certain levels of points in a system devised by Exel to track absences. However, Brokenbaugh was not terminated on the basis of his absences or the point level he achieved based on those absences. We evaluate the evidence only as it pertains to "the criteria identified by the employer, not the criteria only the plaintiff thinks are important." *See Simpson*, 142 F.3d at 647-48.

14

role as well in the employer's discharge decision.  Indeed, if Exel's managers had been burdened with the discriminatory animuses Brokenbaugh claims, one would expect that he would have been terminated long before he was as a result of one of his earlier infractions.

IV.

Finally, Brokenbaugh challenges the District Court's grant of summary judgment on his breach of contract claim.  After his third positive test for cocaine on the job, Brokenbaugh and Exel signed a document dated 12/2/98 containing the following text:

> Condition of Employment
> William Brokenbaugh . . .
>
> This document is a mutual and binding agreement between William Brokenbaugh . . . and EXEL Logistics regarding Mr. Brokenbaugh['s] continued employment
>
> WHEREAS, Mr. Brokenbaugh has expressed a desire to voluntarily participate in certified drug rehabilitation
>
> WHEREAS, Exel has agreed to accept Brokenbaugh's desire effective November 6, 1998, and;
>
> WHEREAS, Mr. Brokenbaugh and Exel want to formalize the terms of this November 6, 1998 condition of employment and to compromise any differences which may exist between them;
>
> NOW, THEREFORE, in consideration of the mutually satisfactory promises set forth herein, the sufficiency of which is hereby mutually recognized, Mr. Brokenbaugh and Exel agree as follows:
>
> 1. Mr. Brokenbaugh must be evaluated by a certified counseling service and fully participate in a drug rehabilitation program.  He will provide documentation of the recommended counseling program as well as

15

documentation of the successful completion of such program.

2.   Mr. Brokenbaugh's continued employment is conditional on strict compliance with the prescribed treatment plan. The counseling service will inform EXEL an on-ongoing account of his participation in the program. Failure to participate in a prescribed treatment plan will result in termination of employment.

3.   EXEL Logistics will provide payment for the counseling service only as noted in the EXEL logistics Medical Benefits Plan.

4.   Mr. Brokenbaugh will be required to take another drug screen in approximately 90 days. If the results of the screen are "positive," Mr. Brokenbaugh's employment will be terminated.

App. at 626. This dispute is best summarized by the parties' dueling descriptions of that document: Exel dubs it Brokenbaugh's "last-chance agreement" and Brokenbaugh refers to it as his "long-term employment contract." Brokenbaugh argues that Exel violated the covenant of good faith and fair dealing when it terminated his employment in violation of the implied contractual obligation in this document: stay clean and you can keep your job.

In New Jersey, employees are presumed to be terminable at will unless they have a contract with their employer:

> In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise.

*Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 552 (N.J. 1994) (citations omitted).

However, New Jersey does recognize that employment manuals spelling out termination

procedures can give rise to contractual obligations:

> [I]f a plaintiff can prove that an employment manual containing job-security and termination procedures could reasonably be understood by an employee to create binding duties and obligations between the employer and its employees, the manual will constitute, in effect, a unilateral offer to contract that an employee may accept through continued employment.

*Id.* at 552. "The key consideration in determining whether an employment manual gives rise to contractual obligations is the reasonable expectations of the employees." *Id.* at 550. While there is no "categorical test" for determining if employment manuals give rise to such obligations, "[c]ertain factors . . . will generally be relevant . . . [such as] the manual's specific provisions and the context of its preparation and distribution." *Id.*

The document produced by the parties is similar to an employment manual in that it describes specific conditions for Brokenbaugh to avoid being fired. Like an employment manual, Brokenbaugh essentially argues that this document gives rise to an obligation: if the employee follows the rules, he or she will not be fired. Assuming New Jersey's doctrine is applicable to this kind of document, we find that this document cannot be read to create a *reasonable* expectation of continued employment. The "context of [this document's] preparation and distribution" to Brokenbaugh was his third positive test for cocaine use on the job. We agree with the District Court that "it would be illogical and would defy common sense to conclude that Exel, after discovering a third instance of drug abuse by this employee who operates a forklift, intended to ensure this employee's position." District Ct. Op., App. at 37. In addition, the "specific provisions" of the

17

document seem consistent with Exel's description of this as a "last-chance agreement." It is entitled "Condition of Employment." Exel only "agrees" to"accept Brokenbaugh's desire" to obtain drug rehabilitation and to pay for drug counseling consistent with its benefits plan. Finally, it is difficult to understand how Brokenbaugh could expect that if he was dishonest with supervisors, abused another employee, had another accident, or violated numerous other company policies, Exel would be bound to continue his employment as long as he did not violate this agreement. Because this expectation would not have been reasonable in the context of this document's creation, there was no binding agreement, and he could be fired for "good reason, bad reason, or no reason at all."[5]

V.

The judgment of the District Court will be affirmed.

---

[5] The Court in *Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 553 (N.J. 1994) (citations omitted), did note exceptions to this rule exist for employees whose firing violates "public policy" or the NJLAD. We have considered the NJLAD claim and we perceive no public policy problem with Brokenbaugh's discharge.

18