**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5313-16T2

IN THE MATTER OF
ANTONIO CRUZ,
CITY OF NEWARK.

_____

Argued March 7, 2019 – Decided April 15, 2019

Before Judges Simonelli, Whipple and Firko.

On appeal from the New Jersey Civil Service Commission, Docket No. 2017-1988.

Craig S. Gumpel argued the cause for appellant Antonio Cruz.

France H. Casseus, Assistant Corporation Counsel, argued the cause for respondent City of Newark (Kenyatta K. Stewart, Corporation Counsel, attorney; France H. Casseus, on the brief).

Pamela N. Ullman, Deputy Attorney General, argued the cause for respondent Civil Service Commission (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Pamela N. Ullman, on the brief).

PER CURIAM

Appellant Antonio Cruz appeals from the July 14, 2017 final decision of the Civil Service Commission (Commission) upholding the City of Newark's (City) Final Notice of Disciplinary Action (FNDA) removing him from his employment. We affirm.

I.

On October 27, 2014, appellant began his employment with the City as a firefighter. He reported to work on June 25, 2016, and fell asleep while having a cup of coffee with Captain Orlando Alvarez. After appellant spilled his coffee, Alvarez told him to clean it up but appellant only partially complied and left the kitchen. Shortly thereafter, the fire station received an emergent phone call from St. James Hospital and the firefighters on duty reported to the fire truck with the exception of appellant, who was assigned as the driver that day. The firefighters blew the fire truck's horn, sounded the siren, paged appellant on the intercom, and searched for him, to no avail. He failed to report to the fire truck and the crew left without him in light of the emergency. After returning to the fire house, Captain Alvarez and others looked for appellant but could not find him, prompting Alvarez to notify his superior, Battalion Chief Steven P. DeCeuster. Eventually, appellant was found asleep in an empty room at the firehouse.

DeCeuster and Alvarez tried to awaken appellant by shouting his name and kicking his boot, which evoked a limited response. Based upon appellant's condition, DeCeuster suspected he was under the influence of a controlled dangerous substance (CDS) and unfit for duty. Appellant was ordered to undergo drug and alcohol testing at Concentra Medical Center in Elizabeth that morning, which yielded positive results for alcohol, cocaine, benzodiazepines and alprazolam, which were not prescribed.[1] He was suspended "based on being unfit for duty" on June 25, 2016.

On June 27, 2016, the City served a Preliminary Notice of Disciplinary Action (PNDA) charging appellant with violations of the New Jersey Administrative Code, the Newark Fire Department General Orders, and the Newark Fire Department Rules and Regulations. Appellant requested a limited

---

[1] Benzodiazepines are "[a] class of compounds with antianxiety, hypnotic, anticonvulsant, and skeletal muscle relaxant properties." Stedman's Medical Dictionary 213 (28th ed. 2006).

Alprazolam is prescribed "to treat anxiety disorders and panic disorders . . . . [and] is in a class of medications called benzodiazepines." Alprazolam, MedicinePlus, https://medlineplus.gov/druginfo/meds/a684001.html (last visited March 22, 2019).

purpose hearing, which took place on July 25, 2016. The City decided to continue appellant's suspension without pay.

Detective Dwayne Cobbs of the Department of Public Safety, Fire Division, Internal Affairs, conducted an investigation and determined that appellant was unfit for duty. Following a three-day departmental hearing, appellant was found guilty of the charges set forth in the PNDA and on December 16, 2016, the City issued a FNDA finding that appellant was terminated from his position as a firefighter effective June 25, 2016. The FNDA sustained the charges, finding appellant: failed to perform his duties; performed his duties incompetently and inefficiently; neglected his duties; had chronic or excessive absenteeism; demonstrated conduct unbecoming a public employee; and other sufficient cause.

Appellant appealed, and the matter was transferred to the Office of Administrative Law (OAL) for a hearing as a contested case. After a two-day hearing, the Administrative Law Judge (ALJ) issued an Initial Decision on May 4, 2017, reversing appellant's termination and holding that the City should have offered him a letter of conditional employment before removing him. In the City's exceptions filed with the Commission, the City argued issuance of a letter of conditional employment was purely discretionary. The Commission issued a

Final Administrative Action on July 14, 2017, upholding appellant's removal effective June 25, 2016, finding that "[w]hile . . . PDP-19A[2] provided for the issuance of a letter of conditional employment, [the City] has persuasively argued that the policy was discretionary." The Commission further noted that "second chances for drug related infractions are not generally afforded public safety employees, who, as compared with non-public safety employees, are held to a stricter standard of conduct." Thus, the Commission concluded that:

> any use of an illegal drug constitutes a violation of the law and of a [firefighter's] duty to exhibit conduct, both on and off duty, that is commensurate with his position. Here, along with illegal drugs, the appellant had alcohol in his system (albeit not over the legal limit). Moreover, the actual alleged misconduct, sleeping on duty and missing assignments, was not disputed. Finally, the appellant was not a long term employee as he had been serving as a [firefighter] for less than two years prior to the date in question. Under these circumstances, the appellant's offense is sufficiently egregious to warrant his removal. Accordingly, the Commission concludes that the penalty imposed by the appointing authority is neither unduly harsh nor disproportionate to the offense and should be upheld.

This appeal followed.

---

2  PDP-19A contains the City's drug testing policy.

II.

On appeal, appellant challenges the Commission's decision as arbitrary, capricious, and unreasonable because it failed to adopt the ALJ's findings of fact and conclusions of law; the City failed to adhere to its long-standing policy of providing conditional letters of employment; appellant's conduct was not sufficiently egregious to warrant removal; he had no notice that such conduct was prohibited; and his removal was disproportionate and shocking to one's sense of fairness. We disagree with these contentions.

"Appellate courts have 'a limited role' in the review of [agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (second alteration in original) (quoting Henry, 81 N.J. at 579-80; In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013)).

In determining whether agency action is arbitrary, capricious, or unreasonable, [we] must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

> [Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Ibid. (quoting Carter, 191 N.J. at 483). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). Furthermore, "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (second alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App.

Div. 2001)). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to de novo review." Ibid.

The burden of proving that an agency's action is arbitrary, capricious, or unreasonable is on the challenger. Bueno v. Bd. of Trs., Teachers' Pension & Annuity Fund, 422 N.J. Super. 227, 234 (App. Div. 2011).

Appellant first argues that the Commission's decision was arbitrary, capricious, and unreasonable because it failed to adopt the ALJ's findings of fact and conclusions of law. This argument is clearly without merit, as it is well-established that "[t]he Commission has de novo review over public employee disciplinary matters." In re Restrepo, Dep't of Corr., 449 N.J. Super. 409, 426 (App. Div. 2017). Thus, the Commission was not bound by the ALJ's findings.

III.

Appellant next argues that the Commission's decision was arbitrary, capricious and unreasonable because the City was required to provide him with an opportunity to execute a conditional letter of employment prior to his removal. He argues that this requirement was negotiated by the City and the

Newark Firefighters' Union (NFU), was incorporated into the City's disciplinary action policies, PDP-19 and PDP-19A, and has been followed, without exception, since its implementation. The Commission and the City both counter that the policy regarding the use of conditional letters of employment is not mandatory but discretionary and, therefore, the City was not obligated to execute a conditional letter of employment to appellant. Furthermore, the City argues that PDP-19 and PDP-19A are not negotiated policies and "[t]here is nothing in the collective bargaining agreement between the City and NFU which addresses a letter of conditional employment."

As noted by the City, the only negotiated agreement between it and the NFU is the collective negotiations agreement (CNA), which became effective January 1, 2013, and remained in effect at the time of appellant's termination. The CNA provides that the City has the right to suspend, discharge, or take other disciplinary action against an employee "for good and just cause." The CNA also provides, "[i]t is agreed that nothing herein shall in any way prohibit the City from discharging or otherwise disciplining any employee, regardless of his/her seniority, for good and just cause."

Appellant argues that "good and just cause" for termination was not met here because "the negotiated policy between the City and the [NFU]" does not

permit a firefighter who tests positive for drugs the first time to be terminated. The CNA neither sets forth a requirement that the City execute a conditional letter of employment, nor does it contain any reference to conditional letters of employment. The only document that addresses conditional letters of employment is PDP-19A, which is not a negotiated policy or an agreement between the City and NFU.

In addition to providing the City with the right to discharge an employee for "good and just cause" the collective negotiations agreement provides that "[i]t is understood that employees shall comply with all . . . rules and regulations" and "[i]n the event that the employee(s) shall refuse to comply with a rule or regulation . . . the City shall have the right, as its option, to suspend or discharge the offending employee(s)." Accordingly, the City retained the right and "option" to discharge a recalcitrant employee. Although a positive drug test may not mandate termination, the City has the option to terminate an employee who violates a rule or regulation, rendering such a violation "good and just cause" for termination.

We further reject appellant's argument that the City did not establish "good and just cause according to law" because it failed to adhere to its ostensibly "long-standing" policy of providing conditional letters of

employment and "where feasible an employer should afford an opportunity for rehabilitation to an employee handicapped by substance abuse[,]" quoting In re Walden, 2009 N.J. CSC LEXIS 1559 (Dec. 4, 2009).[3]

Although we have acknowledged the need to accommodate employees handicapped by substance abuse, "[r]efusal to continue employment of a handicapped person is lawful where employment in a particular position would be hazardous to that individual or to others." In re Cahill, 245 N.J. Super. 397, 401 (App. Div. 1991). Saliently, we have stated that improper performance of a firefighter's duties "can result in serious harm to persons and property" and, where a firefighter is terminated from his employment following a positive drug test, "[t]he nature of [his] job duties satisfies the city's burden of proving with a reasonable certainty that his handicap would probably cause injury to himself or to others." Id. at 400-01.

The Commission duly relied on these principles, finding that although "[t]he court in Cahill did consider that an employer, where feasible, should afford an opportunity for rehabilitation to an employee handicapped by substance abuse, it did not mandate that a [firefighter] should not be removed

---

[3] In his reply brief, appellant argues that he has provided evidence that he was an "addict" as defined in PDP-19A. This does not change our analysis.

for a first positive drug test."[4] Thus, while the Commission acknowledged that there is a general preference for providing an addict with an opportunity for rehabilitation, it found that, due to appellant's contumacious behavior in his position as a firefighter, removal was justified.

Further, appellant argues that the Commission should have reversed his removal because the City had a long-standing policy of providing conditional letters of employment to first-time drug users and he should have been treated in accordance with that policy. In support of his argument, appellant relies on In re Larino, 2011 N.J. CSC LEXIS 586 (May 18, 2011), where the Commission upheld the termination of a firefighter who tested positive for marijuana and benzodiazepines, finding that the offense was "sufficiently egregious to warrant his removal." Id. at *16. In Larino, the Commission cited to Cahill, but noted "[t]he fact that [the firefighter in] Cahill was provided with a 'second chance' only demonstrates that such agreements and policies exist, but it does not require that a second chance be given when such policies or agreements did not exist in

_____

[4] Appellant argues there is nothing in the record to support the assertion that an opportunity for rehabilitation is not mandated where employment in a particular position would be hazardous. We have clearly stated that "[r]efusal to continue employment of a handicapped person is lawful where employment in a particular position would be hazardous to that individual or to others." Cahill, 245 N.J. Super. at 401.

the first place." Id. at *13. Appellant contends that the Commission failed to follow its own precedent that second chances should be given whenever a policy or an agreement exists providing for same. But, the Commission's decision in Larino did not provide that second chances must be provided whenever a policy exists; rather, it merely stated that a second chance is not required when such policies do not exist. Ibid.

In its decision, the Commission found that although "PDP-19A provided for the issuance of a letter of conditional employment . . . the policy was discretionary." We agree. In reaching its conclusion, the Commission noted that PDP-19A is an addendum to PDP-19, which includes a disclaimer providing that:

> This policy and procedure is not intended nor should it be construed as changing the status of an employee-at-will or imposing a requirement of showing of cause upon an adverse personnel action when not otherwise required by statute, contract or other provision. This policy is subject to modification or cancellation, by the City in whole or in part, at any time, and it is not intended nor should it be construed as providing an employee with past practice or vested rights.
>
> [(Emphasis added).]

In challenging this disclaimer, appellant argues that it is only set forth in PDP-19 and not PDP-19A, which sets forth the policy regarding conditional letters of

13

employment, and it "contains no disclaimer language." He also argues that the disclaimer is unenforceable because it is not bold typed, underlined, or set off from the rest of the policy. Appellant raises this argument for the first time on appeal; it is not jurisdictional in nature; and does not substantially implicate the public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014); State v. Robinson, 200 N.J. 1, 20 (2009) (reiterating the principle of not considering an issue raised for the first time on appeal absent an exception).

Notwithstanding this established precedent, we will address the merits of the argument. PDP-19A clearly provides that it is an addendum to PDP-19 and it "has been implemented to supplement the current Disciplinary Action Policy, i.e. PDP-19." Thus, we conclude it was not arbitrary, capricious, or unreasonable for the Commission to find that the disclaimer contained in PDP-19 also applied to the policies in PDP-19A.

"[A] disclaimer must be separated from or set off in a way to attract attention[.]" Nicosia v. Wakefern Food Corp., 136 N.J. 401, 415 (1994). A disclaimer is enforceable "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Ibid. (quoting N.J.S.A. 12A:1-201(10)). The reader's attention may be drawn to the disclaimer by using different type, or by underlining or setting off the disclaimer by a different color

14

or border.  Ibid.  Although the entirety of the disclaimer contained in PDP-19 is not set off in different type, it is located on the first page of PDP-19 and is introduced by a bolded, underlined, and capitalized heading reading, "DISCLAIMER".  Therefore, the spirit and intent of Nicosia has been satisfied.

Appellant further argues that the City's use of conditional letters of employment is not discretionary because the City has a long and consistent history of offering such letters and the record fails to establish "that each and every time a firefighter received a conditional letter, it was based on the discretionary authority of the City."  Our review of the record reveals that the language set forth in the conditional letters of employment issued by the City indicates they were offered to firefighters who tested positive for CDS use at the discretion of the fire directors.

Two of the letters appellant proffered provided that, on account of positive drug screens, the firefighters would be terminated effective the date of the test; but "as a result of your willingness to participate in a rehabilitation program, it is [the fire director's] decision to hold your termination in abeyance."  Based on two other firefighters' willingness to participate in a rehabilitative program, the fire director indicated "I will agree to continue [A.D.'s] employment with the

City" and "it is my decision to hold [certain] conditions as terms for [R.S's] continued employment with the City[.]" (Emphasis added).[5]

In addition to the language used in the conditional letters of employment, the discretionary nature of the policy regarding such letters is set forth in the disciplinary action policy, PDP-19, which provides: "A Department Director may bypass the progressive discipline system and recommend the initiation of a major disciplinary action against an employee . . . in instances where the Director believes that the employee's conduct justifies such divergence." The policy further sets forth the conduct which "may result in a major disciplinary action[,]" including "[i]nability to perform duties[,]" "[c]onduct unbecoming a public employee[,]" "[n]eglect of duty[,]" and "[v]iolation of any of the . . . personnel policies and procedures of the City or the rules and regulations of the employing department or agency . . . ." Each of these grounds were included in appellant's notices of disciplinary action.

---

[5]   Although appellant provides copies of multiple conditional letters of employment in his appendix, he only quotes language from one letter in his brief, the only one that does not contain discretionary language. It does provide that the subject firefighter had previously been served with a PNDA, "which provided for [his] removal for duties of employment[,]" thus indicating that a positive drug test is cause for termination.

The principle of progressive discipline can be applied to downgrade the penalty for a current offense "for an employee who has a substantial record of employment that is largely or totally unblemished by significant disciplinary infractions." Herrmann, 192 N.J. at 33. However,

> progressive discipline is not a necessary consideration when reviewing an agency head's choice of penalty when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest.
>
> [Ibid.]

Accordingly, progressive discipline need not apply where the appointing authority determines that an employee's conduct "has so utterly rendered [him or] her devoid of the trust that [the appointing authority] must place in its . . . workers . . . ." Id. at 37. Under these circumstances, the appointing agency's "judgment should not be lightly second-guessed." Ibid.

In a recent Commission decision, In re Meeks, 2019 N.J. CSC LEXIS 68 (Feb. 8, 2019), cited by appellant, a City[6] firefighter was removed after being arrested for possession of marijuana and drug paraphernalia and testing positive for drug use. Id. at *5-6. Meeks was offered a conditional letter of employment

---

[6] Also a City of Newark firefighter.

which provided that any violation of the terms would result in an automatic discharge. Id. at *3-4. The letter required Meeks to "refrain from the use of illegal drugs, and any mood-altering substance and the abuse of alcohol for the duration of [his] career with the City." Id. at *27. Approximately two years later, Meeks tested positive for drugs and was terminated from his position as a City firefighter. Id. at *16-17. Meeks appealed his removal, and the ALJ issued an initial decision, subsequently adopted by the Commission, finding that his removal was appropriate. Appellant relies on the ALJ's initial decision, which states "[c]onditional [l]etters of [e]mployment are used in administrative cases where the employee has tested positive for drugs or alcohol."[7] Id. at *9.

Although the ALJ's decision in Meeks recognizes that conditional letters of employment are sometimes used, we disagree with appellant's claim that the City was required to offer him a conditional letter. On the contrary, the ALJ in Meeks acknowledged that "[a]n employee may be removed for egregious conduct without regard to progressive discipline" and "[a]bsence of judgment alone can be sufficient to warrant termination if the employee is in a sensitive

---

[7] The issue before the ALJ and the Commission in Meeks, unlike this matter, was not whether Meeks was entitled to a conditional letter of employment but rather, whether he engaged in the alleged conduct. Id. at *2.

18

position that requires public trust in the agency's judgment." Id. at *34-35. Moreover, the ALJ further provided that progressive discipline is not necessary

> when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest.
>
> Thus, progressive discipline has been bypassed when an employee engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes risk of harm to persons or property.
>
> [Id. at *40-41 (quoting Herrmann, 192 N.J at 33).]

The holding in Meeks does not alter our analysis.

Applying these principles, we discern no reason to disturb the Commission's decision to affirm the penalty of removal. Because of its severity and egregiousness, appellant's misconduct did not require application of progressive discipline.

## IV.

Next, appellant challenges the Commission's finding that his removal was appropriate because he engaged in egregious behavior. The Commission noted that although the concept of progressive discipline is often considered in determining a penalty,

19

it is well established that where the underlying conduct is of an egregious nature, the imposition of a penalty up to and including removal is appropriate, regardless of an individual's disciplinary history. See Henry v. Rahway State Prison, 81 N.J. 571 (1980). It is settled that the theory of progressive discipline is not "a fixed and immutable rule to be followed without question." Rather, it is recognized that some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record. See Carter v. Bordentown, 191 N.J. 474, 484 (2007).

The Commission further noted that firefighters "hold very unique positions, and any disregard for the law is unacceptable in a [firefighter] who operates in the context of a paramilitary organization." In light of appellant's position as a firefighter, the Commission found that his conduct was "sufficiently egregious to warrant his removal." We agree.

Appellant argues that "testing positive for a controlled substance is not egregious conduct[,]" and does not "warrant bypassing of progressive discipline." The Commission and the City both counter that concepts of progressive discipline are not appropriate in all cases. Moreover, the Commission argues that "[i]n this case, the Commission reasonably determined that a [firefighter] who came to work under the influence of drugs and alcohol . . . caused a substantial risk of harm to persons or property and should therefore be removed from employment."

The concept of progressive discipline provides that "a firefighter's prior disciplinary record [is] 'inherently relevant' to determining an appropriate penalty for a subsequent offense" and "reject[s] the argument that a proposed sanction must be based on the severity of the current infraction alone." Carter, 191 N.J. at 483. Thus, our courts have found that "just cause for dismissal could be found where there ha[s] been 'habitual tardiness' or 'chronic misconduct'" and "an employee's past record [can] properly be considered in fashioning the 'appropriate penalty for the current specific offense.'" Stallworth, 208 N.J. at 195-96 (quoting W. New York v. Bock, 38 N.J. 500, 522-23 (1962)).

Although appellant was not working in a law enforcement capacity, we have recognized that a firefighter's position is of such a nature that the "negligent or improper performance of the duties of a firefighter can result in serious harm to persons and property . . . ." In re Jackson, 294 N.J. Super. 233, 236 (App. Div. 1996). Moreover, as noted in the Final Administrative Action, "[t]he Commission has long recognized that [firefighters] hold very unique positions, and any disregard for the law is unacceptable in a [firefighter] who operates in the context of a paramilitary organization." See also Larino, 2011 N.J. CSC LEXIS at *15. A firefighter's positive drug test constituted conduct that was sufficiently egregious to warrant removal because "any use of an illegal drug

constitutes a violation of the law and of a [firefighter's] duty to exhibit conduct, both on and off duty, that is commensurate with his position." Ibid.; see also In re Baker, City of E. Orange, Fire Dep't, 2011 N.J. CSC LEXIS 949, *23 (June 1, 2011) ("It is essential for the safety of the public and for the protection of property that a firefighter not use cocaine . . . . As such, [appellant's] use of cocaine is particularly egregious in view of the nature of his employment . . . ."); Walden 2009 N.J. CSC LEXIS at *13 (Upholding the termination of firefighter who was charged with driving while under the influence of alcohol, finding that "[t]he charges are particularly egregious in light of the fact that the appellant is a [firefighter] who holds an extremely visible position of trust.").

We have also acknowledged the unique nature of a firefighter's position by refusing to challenge a finding that "the negligent or improper performance" of a firefighter's position "can result in serious harm to persons and property[,]" and concluding that such a conclusion is "obvious to anyone even superficially familiar with the performance of a firefighter's duties[,]" and that "[a] firefighter under the influence of drugs cannot do the job." Cahill, 245 N.J. Super. at 400-01. Even though a firefighter does not operate in a law enforcement setting, the position "involves public safety" and the use of drugs or alcohol while

22

operating in that position "causes risk of harm to persons or property." Stallworth, 208 N.J. at 197 (quoting Herrmann, 192 N.J. at 33).

Reporting to work under the influence of alcohol and drugs, falling asleep on duty to the point of being unresponsive, missing an emergent call, and being unable to drive the fire truck on the day in question is inexcusable as a "first-time positive drug test offender."[8]

We maintain that "[w]ith firefighters, much as with commercial airline pilots or brain surgeons, drug impairment increases exponentially the risks to others, and must correspondingly affect the extent of an employer's accommodation efforts which may be reasonable in the circumstances." Jackson, 294 N.J. Super. at 237. We conclude that the Commission did not act arbitrarily, capriciously, or unreasonably in finding that Cruz's drug and alcohol

---

[8] Although the Commission did not consider appellant's prior disciplinary history in reviewing his termination, the record reveals that he was previously confronted by Captain Vincent Capriglione, who noted that while appellant was assigned to his company, he was "regularly tardy," "always appeared tired and slept a lot" and he "missed a few call assignments." Thus, although the drug test, which resulted in his termination, was appellant's first positive drug test, he had been previously disciplined for conduct similar to his conduct on June 25, 2016, which lead to his termination. Appellant therefore did have previous instances of misconduct which had been called to his attention. See Herrmann, 192 N.J. at 30 (noting that an employee's "past record," for purposes of progressive discipline, includes instances of misconduct that have been previously called to the attention of the employee).

use, and his resulting conduct on June 25, 2016, was sufficiently egregious to warrant his removal.

V.

Appellant next argues that the Commission erred because its findings were "inconsistent with [its] own view that an employee cannot be responsible for conduct in the absence of notice that such conduct is prohibited." Relying on the Commission's decision in In re Collins Newark Sch. Dist., 2017 N.J. CSC LEXIS 239 (Apr. 6, 2017), appellant argues that "a civil service employee cannot be held responsible for an action in the absence of a policy or regulation to guide him."[9]

In Collins, the Commission found that the Newark Public School District's decision to suspend an appellant was not justified because the suspension stemmed from a determination that the appellant had a duty to inform the school district that his license was suspended, despite the absence of any written policy requiring the same. Id. at *4. The Commission rescinded his suspension because there was a lack of notice, written or otherwise, that he had a

---

[9] Appellant also argues that "in the absence of a policy, differing interpretations ensue as to what is appropriate." We cannot accept that he believed arriving to work under the influence of drugs and alcohol, when he was assigned to drive the firetruck, was appropriate.

responsibility to report his license suspension and "a civil service employee cannot be held responsible for an action in the absence of a policy or regulation to guide him." Id. at *15-16. Appellant argues that the same principle should be applied here. We disagree.

Although appellant contends he reasonably believed he would receive a conditional letter of employment in lieu of termination if he tested positive for drug or alcohol use, the issue in Collins was not whether the appellant was aware of the degree of discipline he would receive; rather, it was whether the appellant was aware of his responsibilities regarding the action for which he was charged. In contradistinction, the CNA clearly provided that the City firefighters were required to comply with the department's rules and regulations and "[i]n the event that the employee(s) shall refuse to comply with a rule or regulation . . . the City shall have the right, as its option, to suspend or discharge the offending employee(s)." PDP-19A provided that "City employees shall not possess or use any controlled dangerous substance," and PDP-19 provides that "[a] [d]epartment [d]irector may bypass the progressive discipline system and recommend the initiation of a major disciplinary action against an employee . . . in instances where the [d]irector believes that the employee's conduct

justifies such divergence."[10]  Thus, appellant was clearly aware of the City's policy prohibiting illicit CDS use.

VI.

In his final argument, appellant argues that his removal was so disproportionate to his conduct as to be shocking to one's sense of fairness.  We disagree.  As we stated, an agency action must "be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Herrmann, 192 N.J. at 27-28.  "That deferential standard applies to the review of disciplinary sanctions as well."  Id. at 28.  "A reviewing court should alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into conformity with its delegated authority.  The [c]ourt has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency.'"  Ibid. (quoting In

---

[10]  A copy of the fire department's rules and regulations were not provided, but were accessed at http://newarkfd.com/wp-content/uploads/2017/03/NFD-Rules-and-Regulations.pdf.  Appellant's FNDA lists the rules and regulations violated by him, including:  "Member shall . . . set examples to subordinates and peers in dignity, sobriety, courtesy skill and the observance of discipline"; and "Members shall not commit any act nor shall they be guilty of any omission that constitutes neglect of duty."  Although not included in the FNDA, Article twenty-eight of the rules and regulations also provides that "[t]he addiction of any Member to the use of intoxicating beverages, narcotics or other controlled dangerous substances shall be considered an act against the best interests of the Department, justifying the dismissal of the Member from the Department."

re Polk, 90 N.J. 550, 578 (1982)).  Thus, in reviewing a dismissal action, "the question for the court[] is 'whether such punishment is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.'"'"  Carter, 191 N.J. at 484 (quoting Polk, 90 N.J. at 578).

Moreover, "[a]s a general rule, in reviewing administrative agency decisions, we accord substantial deference to an agency head's choice of remedy or sanction, seeing it as a matter of broad discretion, . . . especially where considerations of public policy are implicated."  Herrmann, 192 N.J. at 34-35 (alteration in original) (quoting Div. of State Police v. Jiras, 305 N.J. Super. 476, 482 (App. Div. 1997)).

Although "[t]he Commission has de novo review over public employee disciplinary matters[,]" courts "'have a limited role in reviewing a decision of an administrative agency' and will overturn the decision only if it is 'arbitrary, capricious or unreasonable or is not supported by substantial credible evidence in the record as a whole.'"  Restrepo, 449 N.J. Super. at 426 (quoting Henry, 81 N.J. at 579-80).

The Commission concluded that, in light of the circumstances, appellant's conduct was "sufficiently egregious to warrant his removal" and his removal was "neither unduly harsh nor disproportionate to the offense and should be

upheld." In making this determination, the Commission: engaged in a painstaking review of the ALJ's decision; analyzed the policies implemented by the City; and considered the parties' arguments in the context of Commission and court precedent. Consideration was also given to the nature of the offense, the theory of progressive discipline, and appellant's position as a firefighter.

The Commission's decision was clearly supported by the record and removal was not "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Herrmann, 192 N.J. at 28-29 (quoting Polk, 90 N.J. at 578).

The question is not whether we would have reached the same decision, but whether the Commission's decision was "shocking" to our "sense of fairness." We are satisfied that the Commission adequately explained its reasons for removing appellant, and its determination in that regard was not arbitrary, capricious, or inconsistent with applicable law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5313-16T2